912 So.2d 8 (2005)
Steve PAUL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-657.
District Court of Appeal of Florida, Fourth District.
March 30, 2005.
*9 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Paul appeals convictions and sentences on four counts of lewd or lascivious acts against a thirteen-year-old victim. Paul was charged with committing six acts of lewd and lascivious molestation, conduct and exhibition, and was found guilty of four; counts I and IV-VI. The issue on appeal is whether the multiple convictions, arising out of the same series of events, violate state and federal double jeopardy protections. We conclude that he was properly convicted on two of the counts and, therefore, affirm in part and reverse in part.
Count I charged that Paul intentionally touched the victim's genital area, or the clothing covering it, contrary to Florida Statute 800.04(5). Count V charged that he intentionally touched the victim in a lewd or lascivious manner by kissing his neck, contrary to Florida Statute 800.04(6). Count IV charged that he intentionally touched the victim in a lewd or lascivious manner by rubbing his penis on the victim's stomach area, contrary to Florida Statute 800.04(6). Count VI charged that Paul intentionally exposed his genitals in a lewd or lascivious manner in the presence of the victim, contrary to Florida Statute 800.04(7).
*10 Paul contends that the acts in all of the counts occurred during one continuous episode without a break in place or time. Paul recognizes that counts I and VI are charged under different subsections of the lewd and lascivious conduct statute than counts IV and V, but asserts that all of the charged acts constitute a single crime.
Taking the evidence most favorable to the state, it reflects that Paul came to the apartment of the thirteen-year-old male victim, where the victim's parents were asleep in their bedroom. They first went into the living room of the apartment. There, Paul kissed the victim on the neck and rubbed the outside of the victim's pants over his penis. Seeing that an adjoining bedroom was empty, Paul asked the victim if they could go into that room. They walked into the bedroom and shut the door. There, Paul proceeded to place his hand on the victim's penis underneath his clothing. The victim then removed his shorts, touched Paul's penis, and Paul rubbed his exposed penis over the victim's leg and stomach and ejaculated. At that point, the victim's sister and her boyfriend arrived.
In a number of decisions, this court has recognized that where a defendant is charged with lewd and lascivious battery, the different acts of touching are to be viewed with reference to the spatial and temporal aspects of the surrounding circumstances in order to determine whether the defendant had time to pause, reflect, and form a new criminal intent between occurrences. See Eaddy v. State, 789 So.2d 1093, 1095 (Fla. 4th DCA 2001); Coffield v. State, 872 So.2d 430 (Fla. 4th DCA 2004); Mijarez v. State, 889 So.2d 827 (Fla. 4th DCA 2004). In each case, the sex acts in question occurred in a single episode and a single location, with one act immediately following the other, with no temporal breaks, and without the requisite time for the defendant to pause and reflect in order to form a second criminal intent.
In Coffield, we recognized that the circumstances in that case were clearly distinguishable from those in Saavedra v. State, 576 So.2d 953, 955 (Fla. 1st DCA 1991). In Coffield, the acts of touching in question occurred in a meter room, at one time, while in Saavedra, the defendant kidnapped the victim and engaged in three separate incidents of intercourse, all within the same night, but occurring at three distinct locations. The First District, in Saavedra, recognized that the perpetrators had enough time in between each sexual encounter to reflect on the last act and form a new criminal intent to commit the next sexual act. Id.
Although the Coffield opinion mentions an act of kissing that occurred prior to entry into the meter room, it is clear from the appellant's brief in Coffield that both of the criminal acts in question in that case occurred in the meter room; one count was for Coffield's act of touching the victim's vagina with his finger and the other count for penetrating with his penis.
In the present case, two aspects of double jeopardy are in question: (1) whether there was any break between the lewd acts committed by Paul where he could reflect and form criminal intent before the next act, and (2) whether Paul may be convicted of separate offenses where the legislature, in 1997, amended section 800.04(4)-(7), which now criminalizes separate and distinct behaviors.
With regard to the temporal break in time and space question, we conclude that this case is most analogous to Saavedra, where double jeopardy was not found as to three convictions of sexual battery where the defendant raped the victim in her backyard, then took her to a slide in a park and raped her, then moved her elsewhere *11 in the park and raped her. It is also analogous to Burrows v. State, 649 So.2d 902 (Fla. 1st DCA 1995), where double jeopardy was not violated by two convictions for sexual battery where the defendant raped his victim in the bedroom, went into the living room, then returned and raped her again in the bedroom.
In this case, at the point in time at which Paul asked the victim if they could move from the living room into the empty bedroom, Paul had the time to pause and reflect on what he was doing, thus separating counts I and V (kissing the victim on the neck and touching the victim's genitals outside his clothing in the living room) from counts IV and VI (Paul exposing his penis to the victim and Paul rubbing his penis on the victim). This is demonstrated by the fact that Paul deliberately moved the victim from the more public living room into the more private bedroom where they were less likely to be discovered.
Section 800.04 was substantially re-written, effective October 1, 1999. Subsection 800.04(4), lewd or lascivious battery, not charged in the counts in question, covers a defendant who "(a) engages in sexual activity with a person 12 years of age or older but less than 16 years of age. . . ." Subsection (5), lewd or lascivious molestation, covers a defendant "who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator. . . ." Subsection 800.04(6), lewd or lascivious conduct, covers a defendant who "1. Intentionally touches a person under 16 years of age in a lewd or lascivious manner; or 2. Solicits a person under 16 years of age to commit a lewd or lascivious act." Subsection 800.04(7), lewd or lascivious exhibition, covers a defendant who "1. Intentionally masturbates; 2. Intentionally exposes the genitals in a lewd or lascivious manner; or 3. Intentionally commits any other sexual act that does not involve actual physical or sexual contact . . . in the presence of a victim who is less than 16 years of age, commits lewd or lascivious exhibition."
We are obligated to apply this statute consistent with section 775.021(4), Florida Statutes, and Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The state contends that the legislature recognized, in adopting these amendments, that it was creating separate offenses. Ch. 99-201, Laws of Fla. Nevertheless, this court has not read the statutory scheme of section 800.04 as authorizing separate convictions and sentences for each of the cumulative acts occurring in the course of one continuous and almost simultaneous act of lewd and lascivious activity on a minor, particularly where each lesser act leads up to the most serious of the charges. Here, we deem the acts leading up to, or occurring as part of, the most serious, in each room, to be permissive lesser offenses.
The application of the amended statute to multiple counts was recently addressed in Hunsicker v. State, 881 So.2d 1166 (Fla. 5th DCA 2004), where the Fifth District took a contrary position. There, the defendant was found guilty of multiple counts of sexual battery, lewd or lascivious molestation, lewd or lascivious exhibition, and lewd or lascivious conduct. The court reviewed the statute and concluded that the legislature intended, by the amendment, to authorize separate convictions and punishments for each subsection of section 800.04, stating:
The language and structure of the amended statute does focus on individual acts and creates separate criminal offenses in each subsection that designates a specific degree of the crime and the *12 punishment to be imposed for each. We conclude that the legislative intent is clear that separate punishments be imposed for each criminal offense created by the statute. Therefore, with respect to Hunsicker's convictions for the separate crimes of lewd or lascivious molestation, lewd or lascivious conduct, and lewd or lascivious exhibition, there is no double jeopardy violation.
Id. at 1171.
Hunsicker was charged with two counts of lewd or lascivious molestation. Having resolved that the defendant could be charged in separate counts for violation of each subsection, the court recognized that where there are multiple charges as to any subsection, the court reverts to the analysis employed by the cases to determine whether more than one criminal episode occurred. The test is to determine whether there was a sufficient temporal break between the multiple acts charged as to any single subsection.
This court has recently followed a different course in a similar case. See Mijarez. Mijarez was charged with kissing and fondling a minor, having her disrobe, and engaging in intercourse. He was charged with violating multiple sections of section 800.04.[1] In Mijarez, we did not clearly address the issue presented here, in the context of charging the 800.04 subsections in multiple counts, reasoning instead that it was a single assault. Nevertheless, the result requires that we recognize that double jeopardy precludes separate convictions for violating each subsection.
We, therefore, conclude that the lewd acts charged, under counts I and V, which occurred in the living room, are sufficiently separated from those acts that occurred in the bedroom, charged under counts IV and VI, to stand separately. We conclude that the separate acts committed in the bedroom, one in touching the victim's nude body in the manner described, and the other in Paul exposing his genitals, are not chargeable as separate offenses. Paul also should not be punished separately for the cumulative acts occurring in the living room.
Therefore, we certify conflict with Hunsicker, reverse in part, and remand for modification of the sentence to omit two counts and for re-sentencing as to the remaining counts.
KLEIN, J., concurs.
FARMER, C.J., dissents with opinion.
FARMER, C.J., dissenting.
I don't think this case should be distinguished from Mijarez v. State, 889 So.2d 827 (Fla. 4th DCA 2004); Coffield v. State, 872 So.2d 430 (Fla. 4th DCA 2004); and Eaddy v. State, 789 So.2d 1093 (Fla. 4th DCA 2001). The issues are identical. Citing Hunsicker v. State, 881 So.2d 1166 (Fla. 5th DCA 2004), the majority argue that because section 800.04 is separated into subparagraphs for each sexual act that constitutes lewd and lascivious conduct, the several sexual acts committed by Paul in this single sexual encounter involve discrete crimes.
The odd thing here is the majority's disinclination to follow this court's prior decisions in Mijarez, Coffield, and Eaddy. The majority say they have distinguished these other decisions from this case, but in truth they have failed in their attempt to do so. What they have really done is to simply reject the precedents of this court in favor of a contrary holding from another *13 district court of appeal. In this circumstance the ancient doctrine of stare decisis would have a panel follow our own decisions and certify conflict with the other court.
I do not agree with the analysis regarding the statutory structure of subparagraphs discussed in Hunsicker, to authorize separate convictions and punishments for this kind of single sexual encounter. Hunsicker held that the pre-1999 version of section 800.04 did not sufficiently divide or separate the various forms of lewd and lascivious offenses  that the statute instead focused on activity in an episodic sense rather than the individual acts making up the activity. Hunsicker, 881 So.2d at 1170 (citing Gisi v. State, 848 So.2d 1278 (Fla. 2d DCA 2003) and Morman v. State, 811 So.2d 714 (Fla. 2d DCA 2002)). According to Hunsicker, in amending the statute in 1999 the legislature intended to separate the individual acts from the episode and punish each separately. The Hunsicker court noted that the pre-1999 statute punished various acts (assaults, simulated acts on or by a child, sexual battery, and sexual acts in the presence of a child) all as constituting lewd and lascivious conduct. Although Hunsicker did not draw attention to this fact, all were then treated as second degree felonies.[2]
The 1999 amendments to this statute divided all lewd and lascivious acts in the presence of a child into four basic types. Subsection (4) of section 800.04 deals with lewd and lascivious battery; subsection (5) with molestation; subsection (6) with lewd and lascivious conduct; subsection (7) with lewd and lascivious exhibition. Subsections (5) and (6) both involve touching. Subsection (5), however, is limited to touching only specified parts of the body. Subsection (6) merely requires that any touching be "lewd and lascivious" but is not limited to any specific body part. These new offenses are punished in descending order of severity, the worst as a first degree felony, the least as a third degree felony.
In this case, defendant was charged with, and convicted of, three different lewd and lascivious acts under section 800.04, all arising from the same encounter. He was charged with violations under subsection (5), (6) and (7). Under the new statutory definitions, one can envision scenarios in which it is possible to violate both subsections (5) and (6) with a single touch. Similarly, one could commit a subsection (4) battery in the same moment while also committing a lewd and lascivious exhibition under subsection (7).[3]
Because the actual text of the new statute creates separate crimes, and each of them may constitute permissive lesser included offenses in one of the other offenses, I do not think Hunsicker's conclusion is correct. In fact, because the new section 800.04 offenses provide for punishment in descending order of severity, I think the legislature really designed this statute to be used hierarchically. In other words, the purpose is for defendants to be punished for the act carrying the most severe punishment, not cumulatively for each movement occurring during a single sexual episode of lewd and lascivious conduct in the presence of a child.
While these separate subparagraphs were all defined as distinct crimes for purposes *14 of Blockburger analysis, that hardly yields the conclusion that multiple punishments for them in a given case are constitutionally permissible. Although the Hunsicker court did not discuss it, I believe the supreme court's analysis in Hayes v. State, 803 So.2d 695 (Fla.2001), provides the correct analytical template.
One begins with the recognition that the legislature has abrogated the common law "single transaction rule." Borges v. State, 415 So.2d 1265, 1266 (Fla.1982). If the legislature states by clear text that it intends separate convictions and sentences for a single criminal act, there is no double jeopardy violation for the multiple punishments. Hayes, 803 So.2d at 699. Judges are required to consider whether there was a disconnect of time, place or circumstances between the initial offense and any supposed additional offense; these are objective criteria to determine whether distinct and independent criminal acts are involved rather than one continuous criminal act with a single criminal intent. Id. at 704.
The application of this analysis in Hayes demonstrates its intended usage. There, the defendant and two accomplices entered the victim's residence and stole a number of things. Apparently one or more of the perpetrators was armed. They took from the victim computers, cell phones, a beeper, a camera, and keys to a motor vehicle. Although the opinion is not specific on this point, it is a reasonable inference that the items were taken from various places within the residence. As the perpetrators exited the home, the offense of robbery was complete. Then, having left the residence, defendant went to a vehicle parked outside and used the keys to enter and drive it away. That was the second offense of grand theft. As the court explained:
"the taking of the items from inside the residence occurred at a different time and a different place than the taking of the motor vehicle. Although there was only a single victim in this case, and there were no intervening acts, we find that the robbery of various items from inside the residence was sufficiently separate in time, place and circumstances from Hayes' theft of the motor vehicle parked outside the victim's residence to constitute distinct and independent criminal acts."
803 So.2d at 704.
The spatial and temporal separation in Hayes has no logical counterpart here. The two Hayes crimes were divided between the acts of robbery inside the home (including its multiple rooms) and the act of grand theft in later entering the parked vehicle and driving it away. In contrast in today's case, all the acts were of a single character (lewd and lascivious touching and exhibition) and all occurred within a few minutes, and all within the home.
The movement from the living room to the bedroom in this case was inconsequential, much like the Hayes robbers moving throughout the residence to discover articles worth stealing. Afterwards in Hayes, when defendant was outside the house and decided to take the vehicle, he necessarily had to perform several acts distinctively different from his robbery in the house: locate the vehicle, use the key to enter, start the engine and drive it away. His acts outside the house were unlike those in ransacking the house to locate valuables.
In this case, all of the acts charged were of a single kind, associated with lewd and lascivious conduct and without significant change in time or locale. What we actually face in this case is "one continuous criminal act with a single criminal intent" during which the two people moved from the living room to the bedroom without essential interruption of their conduct. It simply will not do to use a stop watch and *15 a measuring tape to break up this single act into artificial intervals of time and space. Indeed, the logic of the majority would allow almost any criminal act to be atomized by post hoc analysis into particles of conduct having no link to the reality of the actual criminal moment.
I would follow our precedents and reverse the multiple convictions in this case.
NOTES
[1] The record in Mijarez reflects one count of violating subsection (4) and two counts of violating subsection 5(a) and (c).
[2] Hunsicker erroneously cites Coffield as having been decided under the pre-1999 version of section 800.04. The Coffield offense occurred in August 2001.
[3] In truth, I think subsection (7) was really meant to be applied to the exhibitionist who flashes unsuspecting victims in public, and not as part of the violation of involving battery, touching or other sexual conduct.