934 So.2d 1167 (2006)
STATE of Florida, Petitioner,
v.
Steve PAUL, Respondent.
No. SC05656.
Supreme Court of Florida.
June 22, 2006.
*1169 Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Jeanine M. Germanowicz, *1170 Assistant Attorney General, West Palm Beach, FL, for Petitioner.
Carey Haughwout, Public Defender and Ellen A. Griffin, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Respondent.
PER CURIAM.
We have for review the decision in Paul v. State, 912 So.2d 8 (Fla. 4th DCA 2005), which certified conflict with the decision in Hunsicker v. State, 881 So.2d 1166 (Fla. 5th DCA 2004), review denied, 894 So.2d 970 (Fla.2005). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

FACTS
Steve Paul was charged with committing six acts of lewd and lascivious offenses against a thirteen-year-old victim and was found guilty of four of the counts. Specifically, the jury found that Paul (1) intentionally touched the victim's genital area or the clothing covering it, contrary to section 800.04(5), Florida Statutes (1999); (2) intentionally touched the victim in a lewd or lascivious manner by kissing the victim's neck, contrary to section 800.04(6), Florida Statutes (1999); (3) intentionally touched the victim in a lewd or lascivious manner by rubbing his penis on the victim's stomach area, contrary to section 800.04(6), Florida Statutes (1999); and (4) intentionally exposed his genitals in a lewd or lascivious manner in the presence of the victim, contrary to section 800.04(7), Florida Statutes (1999). Paul appealed his convictions to the Fourth District Court of Appeal, contending that multiple convictions arising out of the same series of events violate state and federal double jeopardy protections.
Taking the evidence most favorable to the State, the district court succinctly summarized the facts adduced at trial as follows:
Paul came to the apartment of the thirteen-year-old male victim, where the victim's parents were asleep in their bedroom. They first went into the living room of the apartment. There, Paul kissed the victim on the neck and rubbed the outside of the victim's pants over his penis. Seeing that an adjoining bedroom was empty, Paul asked the victim if they could go into that room. They walked into the bedroom and shut the door. There, Paul proceeded to place his hand on the victim's penis underneath his clothing. The victim then removed his shorts, touched Paul's penis, and Paul rubbed his exposed penis over the victim's leg and stomach and ejaculated. At that point, the victim's sister and her boyfriend arrived.
Paul, 912 So.2d at 10. The Fourth District first held that the above incident was not a single criminal episode but actually consisted of two distinct acts. As the court noted, "where a defendant is charged with lewd and lascivious battery, the different acts of touching are to be viewed with reference to the spatial and temporal aspects of the surrounding circumstances in order to determine whether the defendant had time to pause, reflect, and form a new criminal intent between occurrences." Id. In applying this test to the defendant, the court found that two sexual offenses occurred: one in the living room and one in the bedroom. As the court elaborated, "at the point in time at which Paul asked the victim if they could move from the living room into the empty bedroom, Paul had the time to pause and reflect on what he was doing . . . . This is demonstrated by the fact that Paul deliberately moved the victim from the more public living room *1171 into the more private bedroom where they were less likely to be discovered." Id. at 11.
The Fourth District then addressed whether double jeopardy was violated when the defendant was convicted of two counts for each of these two separate criminal episodes. The State contended that double jeopardy protections were not violated because the Legislature had recently amended section 800.04 to create separate offenses for each of the acts committed. Paul, 912 So.2d at 11. The district court rejected this argument, holding that based on its reading of the statutory scheme of section 800.04, there was no legislative authorization for "separate convictions and sentences for each of the cumulative acts occurring in the course of one continuous and almost simultaneous act of lewd and lascivious activity on a minor, particularly where each lesser act leads up to the most serious of the charges." Id. Instead, the court deemed "the acts leading up to, or occurring as part of, the most serious, in each room, to be permissive lesser offenses." Id. However, the court noted that the Fifth District Court of Appeal took a contrary view regarding the recent amendments to section 800.04 when that court held that the amendment to the statute intended to authorize separate convictions and punishments for each subsection of section 800.04:
The language and structure of the amended statute does focus on individual acts and creates separate criminal offenses in each subsection that designates a specific degree of the crime and the punishment to be imposed for each. We conclude that the legislative intent is clear that separate punishments be imposed for each criminal offense created by the statute. Therefore, with respect to Hunsicker's convictions for the separate crimes of lewd or lascivious molestation, lewd or lascivious conduct, and lewd or lascivious exhibition, there is no double jeopardy violation.
Id. at 11-12 (quoting Hunsicker, 881 So.2d at 1171).

ANALYSIS
Determining whether double jeopardy is violated based on undisputed facts is a legal determination, and thus our standard of review is de novo. State v. Florida, 894 So.2d 941, 945 (Fla.2005). The Fifth Amendment guarantee against double jeopardy[1] consists of three separate constitutional protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (footnotes omitted), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); see also State v. Wilson, 680 So.2d 411, 413 (Fla.1996). As this Court has set forth:
The prevailing standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature "intended to authorize separate *1172 punishments for the two crimes." M.P. v. State, 682 So.2d 79, 81 (Fla.1996); see State v. Anderson, 695 So.2d 309, 311 (Fla.1997) ("Legislative intent is the polestar that guides our analysis in double jeopardy issues. . . ."). Absent a clear statement of legislative intent to authorize separate punishments for two crimes, courts employ the Blockburger[2] test, as codified in section 775.021, Florida Statutes (1997), to determine whether separate offenses exist.
Gordon v. State, 780 So.2d 17, 19-20 (Fla. 2001) (footnote omitted); see also Gaber v. State, 684 So.2d 189, 192 (Fla.1996) ("[A]bsent an explicit statement of legislative intent to authorize separate punishments for two crimes, application of the Blockburger `same-elements' test pursuant to section 775.021(4) . . . is the sole method of determining whether multiple punishments are double-jeopardy violations.") (footnote omitted).
In reviewing section 800.04, we do not find a clear statement of legislative intent, and thus we must employ the Blockburger test as codified in section 775.021, Florida Statutes (2005), to determine whether separate offenses exist. Section 775.021(4) provides:
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
§ 775.021(4), Fla. Stat. (2005). The first portion of this test, section 775.021(4)(a), sets forth the Blockburger "same elements test," which prohibits courts from imposing multiple convictions for an act or acts which occur in one criminal episode if each offense does not contain at least one element distinct from the other offenses. Section 775.021(4)(b) sets forth the exceptions to the Blockburger "same elements" test, providing three additional situations where dual convictions are barred. See Florida, 894 So.2d at 945 n. 2.
Because the Blockburger test applies to crimes occurring in only "one criminal transaction or episode," the first step is to review whether there was one criminal episode or multiple episodes.[3] "In order *1173 to determine whether offenses occurred during a single criminal episode, courts look to whether there are multiple victims, whether the offenses occurred in multiple locations, and whether there has been a `temporal break' between offenses." Murray v. State, 890 So.2d 451, 453 (Fla. 2d DCA 2004) (quoting Staley v. State, 829 So.2d 400, 401 (Fla. 2nd DCA 2002)); see also Russo v. State, 804 So.2d 419, 420-21 (Fla. 4th DCA 2001) (same); Cabrera v. State, 884 So.2d 482, 484 (Fla. 5th DCA 2004) (holding that in order for crimes to be considered to have occurred in more than one criminal episode, there must be a sufficient temporal break between the two acts in order to allow the offender to reflect and form a new criminal intent for each offense). In this case, we agree with the district court that based on the circumstances presented, more than one criminal episode occurredone in the living room when Paul first entered and the next after Paul invited the boy back to a more private room. Accordingly, the court may impose separate convictions and sentences for each criminal episode. The trial court, however, imposed two separate convictions for each criminal episode. The Fourth District reversed these dual convictions based on double jeopardy grounds, and the State contests this decision. To review this matter, we must apply the Blockburger test to each criminal episode to determine whether multiple punishments are authorized.
The first criminal episode occurred in the living room when Paul first entered the home. Specifically at issue are two counts: (1) count Ilewd and lascivious molestation by touching the victim's genital area or the clothing covering it in violation of section 800.04(5)(a); and (2) count Vlewd and lascivious conduct by kissing the victim's neck in violation of section 800.04(6)(a). In order for multiple convictions to be permitted under these two counts pursuant to section 775.021(4)(a), i.e., the "same elements" test, each offense is considered separate "if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial." § 775.021(4)(a), Fla. Stat. (2005) (emphasis added). Therefore, we must review the necessary elements of each violation under the statute itself. In comparing the elements of sections 800.04(5)(a) and 800.04(6)(a), we hold the same elements test will not permit multiple convictions. Specifically, section 800.04(6)(a)(1) defines "lewd or lascivious conduct" as any intentional touching of "a person under 16 years of age in a lewd or lascivious manner," while section 800.04(5)(a) defines "lewd or lascivious molestation" as the intentional touching "in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator." § 800.04, Fla. Stat. (1999).[4] In other words, any violation of subsection (5)(a), which prohibits the lewd touching of particular body parts of a person *1174 under sixteen years of age, will also violate subsection (6)(a), which simply prohibits any lewd touching of a person under sixteen years of age. Thus, one cannot say "each offense has an element that the other does not." While subsection (5)(a) has an element that subsection (6)(a) does not, the converse is not truethat (6)(a)(1) has an element (5)(a) does not. Therefore, dual convictions and punishments are not permitted for these violations.
Next, the Court must consider whether multiple convictions and punishments are permitted for the criminal episode which transpired in the bedroom: (1) count IVlewd and lascivious conduct by rubbing his penis on the victim's stomach in violation of section 800.04(6)(a); and (2) count VIlewd and lascivious exhibition by intentionally exposing his penis to the victim in violation of section 800.04(7). Specifically, these convictions occurred for the same actin rubbing his penis against the victim, Paul automatically had to expose his penis. The relevant portions of the statute provide:
(6) LEWD OR LASCIVIOUS CONDUCT.
(a) A person who:
1. Intentionally touches a person under 16 years of age in a lewd or lascivious manner; . . . commits lewd or lascivious conduct.
. . . .
(7) LEWD OR LASCIVIOUS EXHIBITION.
(a) A person who:
. . . .
2. Intentionally exposes the genitals in a lewd or lascivious manner; . . . in the presence of a victim who is less than 16 years of age, commits lewd or lascivious exhibition.
§ 800.04, Fla. Stat. (1999). Under the "same elements" test, each of these provisions does require separate elements that the other does not. Under subsection (6)(a), a defendant must simply touch a person under sixteen years of age in a lewd or lascivious mannerthe touching does not mean that the offender has to exhibit any genitals in order to commit this violation. Under subsection (7)(a), a defendant violates the statute if he intentionally exposes his genitals in a lewd or lascivious mannerno touching is required at all. Accordingly, while Paul engaged in only one act that violated both subsections at the same time, he can still be convicted of both violations unless the offenses come within one of the exceptions in subsection (4)(b).
As addressed above, section 775.021(4)(b) prohibits multiple convictions and punishments for: "(1) [o]ffenses which require identical elements of proof; (2) [o]ffenses which are degrees of the same offense as provided by statute; [and] (3) [o]ffenses which are lesser offenses the statutory elements of which are subsumed by the greater offense." § 775.021(4)(b), Fla. Stat. (2005). Section 775.021(4)(b)(1), which concerns offenses that "require identical elements of proof," does not apply here. Violating section 800.04(6) requires *1175 a touching, and violating section 800.04(7) requires an exhibition of the offender's genitals. Hence, although both crimes occurred based on the same act, the offenses themselves do not require identical elements of proof.
The next exception is subsection 775.021(4)(b)(2), which prohibits multiple convictions and punishments for "[o]ffenses which are degrees of the same offense as provided by statute." In Florida, this Court's most recent case addressing this exception, the Court looked to whether both crimes intend to punish the same primary evil. Specifically, in Florida, the defendant was convicted of both aggravated battery on a law enforcement officer and attempted second-degree murder with a firearm after he shot a police officer. Id. at 944. This Court rejected the claim that attempted second-degree murder and aggravated battery were degree variants of the crime of injuring someone, holding that attempted murder punishes the potential of the defendant's act to cause death, whereas aggravated battery punishes the act of injuring another person. Id. at 949 (relying on the analysis set forth in Gordon v. State, 780 So.2d 17, 23 (Fla.2001)).
In turning our attention to the case at hand, we note that both lewd or lascivious conduct and lewd or lascivious exhibition stem from the same crime of lewd, lascivious, or indecent assault or act upon or in the presence of child. In 1999, the Legislature delineated the crime of lewd, lascivious, or indecent assault upon a child into separate crimes: subsection 800.04(6) prohibits lewd or lascivious conduct upon a child; and subsection 800.04(7) prohibits lewd or lascivious exhibition upon or in the presence of a child. We find that both crimes are not intended to punish the same primary evil but that the different subsections address different evils: one forbids lewd or lascivious exhibition; and the other prohibits lewd or lascivious touching. Thus, the two crimes are not merely degree variants of the same core offense and do not come within the exception to the requirement of separate convictions set out in section 775.021(4)(b)(2).
The last exception to consider is in subsection 775.021(4)(b)(3), which applies to "[o]ffenses which are lesser offenses the statutory elements of which are subsumed by the greater offense." § 775.021(4)(b)(3), Fla. Stat. (2005). As this Court recently stressed in Florida, 894 So.2d at 947, "subsection (4)(b)(3) applies only to necessarily lesser included offenses," which have been defined as "those [offenses] in which the elements of the lesser offense are always subsumed within the greater, without regard to the charging document or evidence at trial." Id. In this case, lewd or lascivious conduct does not necessarily include lewd or lascivious exhibition. The only reason why the two were charged based on the one act in the bedroom is because Paul conducted the prohibited touching with his genitals, therefore also exposing his genitals in the process of touching the victim. However, if he had simply touched the victim's stomach in a lewd manner with any other portion of his body, he would have only violated 800.04(6). Because the determination regarding a necessarily lesser included offense is confined to the statutory elements of the crime and does not consider the evidence at trial, double jeopardy is not violated by these two convictions.

CONCLUSION
In conclusion, we approve in part the decision of the district court, to the extent that it found two criminal episodes *1176 occurred and that Paul could not be convicted of both a violation of section 800.04(6)(a)(1), Florida Statutes, and section 800.04(5)(a), Florida Statutes, for the acts which occurred in the living room. However, we quash the district court's determination that application of section 775.021 prohibits convictions of both section 800.04(6)(a) (lewd and lascivious conduct) and section 800.04(7) (lewd and lascivious exhibition) for the acts that occurred in the bedroom. We further disapprove the decision in Hunsicker to the extent that it is inconsistent with this opinion. The case is hereby remanded for further proceedings consistent with this opinion.
It is so ordered.
WELLS, LEWIS, QUINCE, and BELL, JJ., concur.
CANTERO, J., specially concurs with an opinion, in which WELLS and BELL, JJ., concur.
PARIENTE, C.J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
CANTERO, J., specially concurring.
I concur in the majority's result and much of its reasoning. I must admit discomfort, however, with our continued reliance on the "same evil" test articulated in Carawan v. State, 515 So.2d 161 (Fla. 1987), but abrogated the following year by statutory amendment. See ch. 88-131, § 7, Laws of Fla. The statute does not mention any such test. It simply prohibits separate punishments for crimes that "are degrees of the same offense as provided by statute." § 775.021(4)(b)(2), Fla. Stat. (1999) (emphasis added). I would apply the plain meaning of that language. The Legislature intends to disallow separate punishments for crimes arising from the same criminal transaction only when the statute itself provides for an offense with multiple degrees. By looking beyond the statute to decipher whether the crimes target the "same evil," the majority defies legislative intent.
The purpose of double jeopardy protections is not to restrict, but to respect, the Legislature's authority to decide when multiple sentences may be imposed. As the majority acknowledges, see majority op. at 1171-72, we have consistently held that "[i]n determining the constitutionality of multiple convictions and sentences for offenses arising from the same criminal transaction, the dispositive question is whether the legislature `intended to authorize separate punishments for the two crimes.'" M.P. v. State, 682 So.2d 79, 81 (Fla.1996) (quoting Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)). Because legislative intent is not always clear from the statutory language, the United States Supreme Court has designed a test to resolve ambiguities. See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under that test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. at 304, 52 S.Ct. 180. The Supreme Court has cautioned that this test is "not a constitutional rule requiring courts to negate clearly expressed legislative intent," Missouri v. Hunter, 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), but merely a "rule of statutory construction" used to ascertain legislative intent when it has not been clearly manifested. Albernaz, 450 U.S. at 340, 101 S.Ct. 1137.
*1177 In Florida, the Legislature has codified this test as a rule of statutory construction, see § 775.021(4), Fla. Stat. (1999), thereby clarifying its intent and eliminating the need to rely on Blockburger. The statute explains that "[t]he intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity. . . to determine legislative intent." Id. § 775.021(4)(b). Consistent with this objective, a defendant "shall be sentenced separately" for multiple offenses arising from one criminal episode as long as "each offense requires proof of an element that the other does not." Id. § 775.021(4)(a). The statute contains three, and only three, exceptions. The Legislature does not intend to allow separate sentencing for related offenses that (1) "require identical elements of proof," (2) "are degrees of the same offense as provided by statute," or (3) "are lesser offenses the statutory elements of which are subsumed by the greater offense." Id. § 775.021(4)(b). I agree with the majority's straightforward application of the first and third exceptions. My disagreement concerns only the exception for degree variants of an offense (subsection (4)(b)(2)).
Continuing a strange but steady tradition in our caselaw, the majority interprets the degree-variant exception to mean that separate punishments cannot be imposed where "both crimes intend to punish the same primary evil." Majority op. at 1175. I consider this interpretation strange because, in amending section 775.021 in 1988, the Legislature clearly intended to abrogate our 1987 decision in Carawan, 515 So.2d at 161, which applied that test. Carawan held that "where the accused is charged under two statutory provisions that manifestly address the same evil and no clear evidence of legislative intent exists, the most reasonable conclusion usually is that the legislature did not intend to impose multiple punishments." Id. at 168. We have acknowledged more than once that the Legislature subsequently rejected this holding. See Boler v. State, 678 So.2d 319, 322 (Fla.1996) (explaining that "the 1988 amendment of section 775.021(4) was intended to override our previous decision in Carawan"); State v. Smith, 547 So.2d 613, 615 (Fla.1989) (deeming it "readily apparent that the legislature does not agree with our interpretation of legislative intent and the rules of construction set forth in Carawan"). Nevertheless, rather than simply applying the plain language of the statute, we continue to apply the "same evil" test.
The statute itself creates an exception for crimes that "are degrees of the same offense as provided by statute." § 775.021(4)(b)(2), Fla. Stat. (1999) (emphasis added). By its very language, this exception is intended to apply narrowly. It prohibits separate punishments only when a criminal statute provides for variations in degree of the same offense, so that the defendant would be punished for violating two or more degrees of a single offense. See Sirmons v. State, 634 So.2d 153, 156 (Fla.1994) (Grimes, J., dissenting) (highlighting the phrase "as provided by statute" and concluding that the "Court's obligation is to apply the statute as it is written"). One example is the theft statute, which expressly identifies three degrees of grand theft and two degrees of petit theft. See § 812.014, Fla. Stat. (2005). Another is the homicide statute, which expressly identifies three degrees of murder, as well as multiple forms of manslaughter. See id. §§ 782.04, 782.07. Yet another is arson, which has two degrees. *1178 See id. § 806.01.[5] It is in such cases, and only such cases, that the exception was intended to apply. That is why in Gordon v. State, 780 So.2d 17 (Fla.2001), after expressing concern that "[e]xtended to its logical extreme, a broad reading of Sirmons and the [degree-variant] exception would render section 775.021 a nullity," id. at 23, we noted that "exceptions for homicides... and theft, where the nature of the crime is often defined by degree of the violation, are consistent with the limited statutory exception." Id. (emphasis added).
Although the majority's application of the "same evil" test departs from the plain language of the statutory exception, it does have the support of precedent. After the statutory amendments in 1988, for a while we applied the plain meaning of the exceptionfor example, classifying grand theft of goods and grand theft of a firearm as degree variants because under statute "[t]he degree of the crime of theft depends on what was taken." Johnson v. State, 597 So.2d 798, 799 (Fla.1992). But we soon (and without explanation) reverted to the pre-amendment "same evil" test. In Sirmons, we classified two crimes as degree variants because they were "based on the same core offense." 634 So.2d at 154. Three dissenters, in an opinion by Justice Grimes, warned that "[t]he effect of this decision is to slide back into the Carawan analysis which the Legislature rejected in its 1988 amendment to section 775.021." Id. at 156-57 (Grimes, J., dissenting) (footnote omitted). They were right.[6] In Gordon, 780 So.2d at 17, we even revived Carawan's language, refusing to apply the degree-variant exception because "the separate evils [of the crimes] are sufficiently distinct that they warrant separate punishment." Id. at 23. Last year, in State v. Florida, 894 So.2d 941 (Fla.2005), following Gordon, we held that two crimes could be punished separately because each had its own "primary evil." Id. at 949. Today the majority follows Gordon and Florida, holding that the degree-variant exception focuses on "whether both crimes intend to punish the same primary evil." Majority op. at 1175.
In deference to precedent, I did not object when we applied the "same evil" analysis in Florida. I have come to the conclusion, however, that this analysis departs so dramatically from the plain meaning of the statuteand from the Legislature's obvious intent to abrogate that testthat we should reevaluate those cases. Not only does the "same evil" test fail to respect the plain language of the statute; and not only does continued application *1179 of the test, in light of our admission that the statutory amendments abrogated it, fail to acknowledge the supremacy of legislative intent in double jeopardy analysis; but the test itself is infinitely vague and malleable, and therefore offers much less clarity than straightforward application of the statute.
The statutory exception is easy to apply, requiring courts to determine only whether the criminal code provides for degree variants of a single offense. The same cannot be said for the majority's "same evil" test, which invites courts to reflect abstractly on the evils targeted by various crimes. How does one even decide which evil is "primary" under the majority's approach? Consider the crimes in this case: lewd or lascivious conduct and lewd or lascivious exhibition. The majority concludes that the primary evils of those crimes are "exhibition" and "touching." Majority op. at 1175. But one could just as well conclude that the two crimes are directed toward the same evil of lewd or lascivious conduct toward children. Either position can be rationally defended. Unlike the statutory rule, which is clear and narrow, the "same evil" standard is broad and blurry. As happened in this case, it will continue to spawn litigation and interdistrict conflict about whether particular crimes address the same evil. The statutory amendments were intended to remove such ambiguity and establish a bright line. Today we (once again) fail to capitalize on that opportunity.
Were the Legislature in an ironic mood, it could accuse us of committing the same evil today that we committed in Carawan. My preference would be simply to follow the Legislature's own directive, limiting the degree-variant exception to cases where the Legislature has literally "provided by statute" that multiple crimes are "degrees of the same offense." The Legislature has not done so with respect to the crimes herei.e., lewd or lascivious conduct and lewd or lascivious exhibition. See § 800.04, Fla. Stat. (1999). I therefore agree with the majority's conclusion that those crimes cannot be considered degree variants. In reaching that conclusion, I see no need to ponder their primary evils. In all other respects, I concur with the majority.
WELLS and BELL, JJ., concur.
PARIENTE, C.J., concurring in part and dissenting in part.
While the [Double Jeopardy] Clause itself simply states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," the decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator.
Albernaz v. United States, 450 U.S. 333, 343, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).
Under the Court's decision today, one who exposes and then uses his penis to commit a sexual touching of a victim in a single episode may be convicted of two crimes under section 800.04, Florida Statutes. As I stated when last we sailed the double jeopardy seas, "[s]omething is wrong with this pictureand with the underlying analysis." State v. Florida, 894 So.2d 941, 950 (Fla.2005) (Pariente, C.J., dissenting). In his specially concurring opinion in this case, Justice Cantero agrees with the majority's destination, but questions its route. He would limit the application of section 775.021(4)(b)(2), Florida Statutes (2005), which precludes separate convictions of "[o]ffenses which *1180 are degrees of the same offense as provided by statute" for a defendant's act or acts in a single episode, to statutory offenses in which the Legislature has made a degree relationship explicit. His approach comes closer to the statutory language than the majority's "primary evil" construction of this exception. However, it yields the same illogical resultsmultiple convictions for what is at heart a single crime. Therefore, I cannot sign on for the voyage. Instead, we should return to the "core offense" analysis employed by the Court in construing section 775.021(4)(b)(2) in Sirmons v. State, 634 So.2d 153 (Fla.1994).
In Florida, the Court affirmed convictions of aggravated battery and attempted second-degree murder for the act of firing a single gunshot that struck and injured the victim. Applying the "primary evil" test from Gordon v. State, 780 So.2d 17 (Fla.2001), to section 775.021(4)(b)(2), the majority concluded that the crime of attempted murder punishes the potential to cause death, whereas the crime of aggravated battery punishes an actual, nonconsensual touching or striking. Florida, 894 So.2d at 949.
Justice Cantero concurred in the majority opinion in Florida, but now questions its "primary evil" test under section 775.021(4)(b)(2). I have been in his shoes. In my dissenting opinion in Florida, I acknowledged that my views had changed since I concurred in approving multiple convictions under the "primary evil" analysis in Gordon. 894 So.2d at 951 (Pariente, C.J., dissenting). I noted that Gordon departed from our precedent applying section 775.021(4)(b)(2), which provides an exception for degrees of the same offense as provided by statute to the Legislature's intent to authorize convictions and sentences for each offense committed in a criminal episode. Tracing a line of decisions that started with Sirmons but was effectively abandoned in Gordon, I noted that courts had derived "core offenses" from a number of crimes currently codified in the criminal laws, not merely those initially identified in Justice Kogan's concurring opinion in Sirmons. Florida, 894 So.2d at 950-51. I determined that
where the two convictions are for offenses that are merely aggravated forms of the same underlying offense, only a single conviction is proper under section 775.021(4)(b)(2). Both the rule and the exceptions can retain a reasonable field of operation without arbitrarily limiting core offenses to a narrow few.
Therefore, I conclude that Gordon's focus on whether convictions punish the same "primary evil," 780 So.2d at 23, rather than on whether they constitute "degree variants of the core offense," Sirmons, 634 So.2d at 154, was improper.
Id. at 951 (Pariente, C.J., dissenting).
Justice Cantero views the "same evil" and "core offense" tests as two sides of the same coin, but I consider them distinct. As I stated in Florida, I would discard the former in favor of the latter. See 894 So.2d at 952. Lewd exposure and lewd touching are separate evils within the meaning of Florida and Gordon, which found battery and attempted murder to be separate evils, but they derive from the same core offense of lewd or lascivious conduct involving children. The core offense in section 800.04 is set forth in the title of the statute, "Lewd or lascivious offenses committed upon or in the presence of persons less than 16 years of age." The core offense is also evident in the 1983 version of the statute, before the first of several substantive revisions:

*1181 Any person who shall handle, fondle or make an assault upon any child under the age of 14 years in a lewd, lascivious or indecent manner, or who shall knowingly commit any lewd or lascivious act in the presence of such child, without the intent to commit sexual battery shall be guilty of a felony of the second degree....
§ 800.04, Fla. Stat. (1983).[7] The current version of the statute has subsections that distinguish battery, molestation, conduct, and exhibition, and vary the penalty based on the ages of the perpetrator and victim, but the nature of the conduct making up this crime is essentially the same. Paul's convictions of lewd or lascivious molestation, conduct (two counts), and exhibition are thus merely degree variants of this core crime.
Relying on the Legislature's limitation of the exception in section 775.021(4)(b)(2) to "[o]ffenses which are degrees of the same offense as provided by statute" (emphasis supplied), Justice Cantero would confine the analysis to statutory offenses both those in which the degree relationship is obvious, such as theft, homicide, and arson, and those in which "[o]ther statutory designations . . . evince a relationship of degree." Specially concurring op. at 1178 & note 5. However, this interpretation yields illogical results: separate convictions for lewd exhibition of the defendant's penis followed by a lewd touching with the penis, as in this case, and for aggravated battery and attempted murder based on a single episode of stabbing, shooting, or beating, as in Florida. Justice Cantero's approach would also allow separate convictions for murder and aggravated battery arising from a single lethal attack, contrary to the current law of the state. See Campbell-Eley v. State, 718 So.2d 327, 329 (Fla. 4th DCA 1998) (holding that conviction for second-degree murder and aggravated battery on pregnant woman based on infliction of multiple stab wounds in single homicidal assault violated double jeopardy); Laines v. State, 662 So.2d 1248, 1249 (Fla. 3d DCA 1995) (concluding that killing of victim with "a series of rapid-fire violent acts" in a single transaction violated only the second-degree murder statute and not also the aggravated battery statute), receded from on other grounds by Grene v. State, 702 So.2d 510 (Fla. 3d DCA 1996); cf. Brooks v. State, 918 So.2d 181, 198 (Fla.2005) (concluding that in light of fact that defendant delivered single stabbing blow that resulted in infant's death, aggravated child abuse based on aggravated battery merged into infant's homicide and could not be used as aggravating factor in death case), cert. denied, ___ U.S. ___, 126 S.Ct. 2294, 164 L.Ed.2d 820 (2006).
Courts are obligated to apply statutory language that is clear and unambiguous according to its plain meaning. Montgomery v. State, 897 So.2d 1282, 1285 (Fla. 2005). The divergent judicial interpretations given section 775.021(4)(b)(2) by the Court in cases such as Sirmons and Gordon, and now by Justice Cantero in this case, reflect an innate ambiguity in the statutory language. I cannot resolve this ambiguity in section 775.021(4)(b)(2) in favor of a construction that would authorize convictions for either murder or attempted murder and an aggravated battery inherent in the murder or attempted murder. Nor can I construe this provision to permit the equally illogical result of separate convictions *1182 for a progression of lewd or lascivious acts in a single episode that violate separate subsections of section 800.04. Therefore, I would return to the Sirmons line of precedent and an interpretation of section 775.021(4)(b)(2) that exempts from the presumption of multiple convictions those statutory offenses that are degree variants of a common core offense.
The Second and Fourth Districts have reached similar conclusions, albeit without engaging in "core offense" analysis. Reviewing its precedent, the Fourth District
recognized that where a defendant is charged with lewd and lascivious battery, the different acts of touching are to be viewed with reference to the spatial and temporal aspects of the surrounding circumstances in order to determine whether the defendant had time to pause, reflect, and form a new criminal intent between occurrences. In each case, the sex acts in question occurred in a single episode and a single location, with one act immediately following the other, with no temporal breaks, and without the requisite time for the defendant to pause and reflect in order to form a second criminal intent.
Paul v. State, 912 So.2d 8, 10 (Fla. 4th DCA 2005) (citations omitted). The Second District, reversing two of three convictions under section 800.04 for handling and fondling that preceded intercourse on each of four occasions, concluded that "[t]he constitutional guarantee against double jeopardy prohibits multiple convictions for lewd and lascivious acts that are not sufficiently discrete to be deemed separate offenses." Gisi v. State, 909 So.2d 531, 533 (Fla. 2d DCA 2005).
In this case, Paul committed "one continuous and almost simultaneous act of lewd and lascivious activity on a minor." Paul, 912 So.2d at 11. I agree with the majority that Paul's conduct in the living room, in which he touched the victim's genital area outside his clothing and kissed his neck, constituted one offense of "lewd or lascivious offenses committed upon or in the presence of persons less than 16 years of age" under the "separate elements" test in section 775.021(4)(a), Florida Statutes (2005). I also agree that Paul's acts in the bedroom of exposing his penis and rubbing his penis on the victim's stomach violated sections 800.04(6)(a) and 800.04(7), which have different elements, necessitating analysis under the three exceptions in section 775.021(4)(b) to the legislative preference for separate convictions. I dissent in part because the majority, employing the flawed "primary evil" analysis of Florida and Gordon rather than the "core offense" analysis of the Sirmons line of cases, does not recognize that these violations constitute only one additional offense under section 775.021(4)(b)(2). For the reasons explained in this opinion and my dissent in Florida, I would reverse one of the two convictions for the second of the two episodes.
ANSTEAD, J., concurs.
NOTES
[1] The Fifth Amendment of the United States Constitution provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Likewise, article I, section 9, of the Florida Constitution provides a similar protection: "No person shall . . . be twice put in jeopardy for the same offense." Art. I, § 9, Fla. Const.
[2] See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[3] Of course, if two convictions occurred based on two distinct criminal acts, double jeopardy is not a concern. See Hayes v. State, 803 So.2d 695, 700 (Fla.2001) ("[T]he prohibition against double jeopardy does not prohibit multiple convictions and punishments where a defendant commits two or more distinct criminal acts.").
[4] Both section 800.04(6)(a) and section 800.04(5)(a) include specific alternative conduct. Specifically, section 800.04(6)(a) also addresses the crime of soliciting a person under age sixteen years of age to commit a lewd act, while section 800.04(5)(a) includes forcing or enticing a person under sixteen years of age to touch the perpetrator. As this Court held in Gibbs v. State, 698 So.2d 1206, 1209 (Fla.1997), when courts are reviewing whether double jeopardy is violated based on an alternative conduct statute, the court must break the conduct elements into the specific alternative conduct which is in the other statute being compared and cannot consider the entire range of conduct proscribed by the statute, which in this case would include both offensive touching and offensive solicitation. Such a situation must be differentiated from a case in which the defendant is charged with both solicitation and touching. Thus, "if prosecution is for the same conduct under both statutes, a conviction under more than one of the statutes is a violation of double jeopardy principles." Id. at 1210.
[5] I do not mean to imply that the Legislature must use the magic word "degree" in defining the crime in order for the degree-variant exception to apply. Other statutory designations could also evince a relationship of degree, such as when a crime has an ordinary form and an aggravated form.
[6] In her partial dissent, Chief Justice Pariente argues that we could have and should have prevented the "core offense" analysis from sliding back into the "same evil" analysis. While acknowledging that my textual interpretation of the degree-variant exception "comes closer to the statutory language than the majority's `primary evil' construction," she contends that a "core offense" analysis would be even better because it would prevent "illogical resultsmultiple convictions for what is at heart a single crime." Concurring in part and dissenting in part op. at 1180. As I explained earlier, however, the Legislature has full authority to decide whether to allow multiple sentences for a single criminal transaction. Our most reliable guide to legislative intent is the statutory language. Because the "core offense" analysis has no firmer a statutory foundation than the majority's "primary evil" analysis, I reject them both.
[7] Significant revisions to section 800.04 took place in 1984, 1990, and 1999. See ch. 99-201, § 6, Laws of Fla.; ch. 90-120, § 1, Laws of Fla.; ch. 84-86, § 5, Laws of Fla.