803 So.2d 695 (2001)
Joseph HAYES, Petitioner,
v.
STATE of Florida, Respondent.
No. SC96813.
Supreme Court of Florida.
November 21, 2001.
*696 Bennett H. Brummer, Public Defender, and Robert Godfrey, Assistant Public Defender, *697 Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Robert A. Butterworth, Attorney General, Michael J. Neimand, Senior Assistant Attorney General, and Douglas J. Glaid, Assistant Attorney General, Fort Lauderdale, FL, for Respondent.
PARIENTE, J.
We have for review Hayes v. State, 748 So.2d 1042, 1045 (Fla. 3d DCA 1999), in which the Third District Court of Appeal certified conflict with the Fifth District Court of Appeal's decision in Castleberry v. State, 402 So.2d 1231 (Fla. 5th DCA 1981), on the issue of whether a defendant may be separately convicted of both armed robbery and grand theft of a motor vehicle where the defendant steals various items from inside a victim's residence, including the victim's car keys, and then proceeds outside the residence to steal the victim's motor vehicle utilizing these keys.[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We conclude that where there is a geographic and temporal separation in the taking of separate property, including a motor vehicle, from one victim, the defendant may be convicted of both armed robbery of that separate property and grand theft of a motor vehicle without violating the prohibition against double jeopardy.

BACKGROUND
Petitioner Joseph Hayes was convicted of armed robbery, armed burglary of a structure, and grand theft of a motor vehicle. See Hayes, 748 So.2d at 1044. Hayes' convictions stemmed from an incident in which he and two others entered a residence and stole various items from the victim, including computers, cell phones, a beeper, a camera, and keys to the victim's van. See id. After exiting the residence with these items, Hayes and the two others used the keys to steal the van, which was parked outside of the victim's residence. See id.
On appeal, Hayes asserted that his convictions for armed robbery under section 812.13, Florida Statutes (1997),[2] and grand theft of a motor vehicle under section 812.014, Florida Statutes (1997),[3] were obtained *698 in violation of the prohibition against double jeopardy because both convictions resulted from the same criminal episode. See Hayes, 748 So.2d at 1044. Relying on this Court's opinion in Sirmons v. State, 634 So.2d 153 (Fla.1994), Hayes argued that because both acts arose out of a single criminal episode, double jeopardy prohibited convictions for both of these offenses because they are degree variants of the core offense of theft. See Hayes, 748 So.2d at 1044 n. 2.
The Third District, however, concluded that there was no double jeopardy violation because "where there is the theft of various items, including car keys, from inside the victim's dwelling, and the thief proceeds outside to use the keys to steal the victim's car, there is a sufficient separation of time and place to treat the auto theft as a separate crime" apart from the robbery of items from inside the victim's home. Id. at 1044. The Third District concluded that the theft of the motor vehicle "occurs not upon the taking of the keys but upon the subsequent taking of the car." Id. at 1044-45.[4]
The First District addressed circumstances similar to Hayes in Henderson v. State, 778 So.2d 1046 (Fla. 1st DCA 2001). In Henderson, the First District held that the Double Jeopardy Clause did not preclude convictions for both robbery and grand theft of a motor vehicle where the defendant and an accomplice broke into the victim's residence, forced the victim to the floor and tied her up, ransacked the victim's room, took a number of valuables, including the victim's car keys, and then, utilizing the victim's car keys, stole the victim's motor vehicle. See id. at 1046-48. The First District cited Hayes with approval and held that "the robbery in this case was sufficiently separated from the later theft of the car by both time and geography to justify separate convictions." Id. at 1047. As the Third District did in Hayes, the First District certified conflict with Castleberry and J.M. See Henderson, 778 So.2d at 1047.[5]
On facts materially indistinguishable from those in Hayes and Henderson, the Fifth District in Castleberry addressed whether the defendant could be convicted of both robbery and grand theft, where the defendant entered the victims' residence, tied up the victims, stole a gun, ammunition, money, jewelry, clothes, and other personal property, including one of the victim's car keys, then exited the residence and stole the victim's motor vehicle. 402 So.2d at 1231-32. The Fifth District concluded that because possession of the victim's *699 motor vehicle was the "product of the same force and fear" involved in the robbery and the defendant committed the crimes during the same continuous sequence of events, the defendant could not be convicted of both robbery and grand theft. Id. at 1232. The Fifth District determined that the two takings constituted only one statutory violation because the defendant had committed only one robbery. See id. Accordingly, the Fifth District reversed the defendant's conviction for grand theft of a motor vehicle. See id.

ANALYSIS

A. DOUBLE JEOPARDY PRINCIPLES
The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life and limb." U.S. Const. amend. V. The Double Jeopardy Clause of the Florida Constitution provides that "[n]o person shall be ... twice put in jeopardy for the same offense." Art. I, § 9, Fla. Const. The issue in this case is whether multiple convictions and punishments for robbery and grand theft would be prohibited by the Double Jeopardy Clause. See Rutledge v. United States, 517 U.S. 292, 301, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (explaining that the prohibition against double jeopardy applies equally to both multiple convictions and the imposition of multiple sentences). As the United States Supreme Court explained in Brown v. Ohio, 432 U.S. at 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), where multiple punishments are imposed at a single trial, "the role of the constitutional guarantee against double jeopardy is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments arising from a single criminal act."
In Borges v. State, 415 So.2d 1265 (Fla. 1982), we explained the constitutional scope of the Double Jeopardy Clause and the Legislature's powers as follows:
The "power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the" legislature. The Double Jeopardy Clause forbids the state to seek and the courts to impose more than one punishment for a single commission of a legislatively defined offense. "But the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." The Double Jeopardy Clause "presents no substantive limitation on the legislature's power to prescribe multiple punishments," but rather, "seeks only to prevent courts either from allowing multiple prosecutions or from imposing multiple punishments for a single, legislatively defined offense."
Id. at 1267 (citations omitted) (emphasis supplied).
As we explained in Borges, 415 So.2d at 1266, the common law "single transaction rule," which had previously limited convictions arising out of a criminal transaction or episode to the most serious offense, has been legislatively overruled. Therefore, if the Legislature intended separate convictions and sentences for a defendant's single criminal act, there is no double jeopardy violation for the multiple punishments. See Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); State v. Anderson, 695 So.2d 309, 311 (Fla.1997); M.P. v. State, 682 So.2d 79, 81 (Fla.1996); State v. Smith, 547 So.2d 613, 614 (Fla.1989).
*700 Section 775.021(4)(a), Florida Statutes (1997),[6] recognizes that multiple convictions and punishments may be imposed for separate offenses committed in the course of one criminal transaction or episode. Under section 775.021(4)(a), "offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial."
In Sirmons v. State, 634 So.2d 153, 153 (Fla.1994), we applied section 775.021 to determine whether the Legislature had authorized convictions for both robbery and grand theft of a motor vehicle, where the convictions stemmed from a single taking of an automobile at knifepoint. In Sirmons, the defendant was charged with two crimes for the taking of the same property. Id. Because the defendant had committed only one criminal act, we applied section 775.021(4)(b) and, after comparing the elements of the robbery and grand theft of a motor vehicle statutes, we concluded that the Legislature did not authorize multiple convictions for the single taking of one automobile. See id. at 154.[7] Thus, as we explained in Sirmons, multiple punishments or convictions were not permitted for the defendant's single taking of the motor vehicle at knifepoint because the offenses in question were "merely degree variants of the core offense of theft." Id. at 154.
Although Hayes contends that Sirmons is dispositive in this case, Hayes' argument is premised upon his assertion that his theft of personal property from inside the victim's residence and subsequent taking of the victim's motor vehicle constituted a single taking amounting to one criminal act. If Hayes is correct that his multiple convictions were premised upon a single taking of the victim's property, based upon Sirmons, Hayes' convictions for both robbery and grand theft of a motor vehicle would violate double jeopardy.
However, the prohibition against double jeopardy does not prohibit multiple convictions and punishments where a defendant commits two or more distinct criminal acts. See Blockburger v. United States, 284 U.S. 299, 302-04, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Brown v. State, 430 So.2d 446, 447 (Fla.1983); Hearn v. State, 55 So.2d 559, 560 (Fla.1951). Thus, in resolving the certified conflict, this Court must determine whether the armed robbery inside the residence and the subsequent *701 grand theft of the motor vehicle parked outside the residence constitute separate and distinct criminal acts so as to permit dual convictions and punishments for armed robbery and grand theft. The difficulty in this case becomes how to resolve the issue presented while providing appropriate guidelines for courts to make the necessary determination of whether a criminal transaction or episode gave rise to distinct and independent criminal acts resulting in separate crimes so as not to run afoul of the constitutional prohibition against double jeopardy.

B. DISTINCT AND INDEPENDENT CRIMINAL ACTS
Few cases from this Court have enunciated guiding principles to apply in making the determination of when a criminal episode involving the taking of property from a single victim gives rise to distinct and independent acts resulting in separate crimes for double jeopardy purposes. In Hearn, 55 So.2d at 560, we addressed whether the defendant could be convicted of multiple counts of larceny for the theft of livestock, and, citing Green v. State, 134 Fla. 216, 183 So. 728 (1938), we recognized the longstanding principle in this State that
where property is stolen from the same owner or from different owners at different times or places or as a result of a series of acts, separated in either time, place or circumstances, one from the other each taking is a separate and distinct offense.... If the converse is true, then it should follow that where several articles are taken at the same time and place as one continuous act, though owned by different people, the offense is a single larceny.
Each case of this nature must be determined by the facts and circumstances of the particular case. There is some conflict in the cases, but the clear weight of authority is to the effect that the stealing of several articles at the same time and place as one continuous act or transaction is a single offense, even though the property belongs to different owners, for the reason that it is only a single act or taking.
Id.
Although the stolen livestock in Hearn belonged to different owners, we observed that
the nine cows and the two calves were all on the same open range, were rounded up at the same time, were placed in the same truck by the defendants at the same time from the same loading pen. The cattle were all grazing in and around the same area, and apparently were not too far separated by distance, because the act of rounding up, loading, etc., consumed only a few minutes of time.
Id. at 560.
We held that it would be a violation of the double jeopardy protections of the United States and Florida Constitutions to convict the defendant of multiple offenses and impose multiple punishments because only one criminal act had taken place. See id. at 561. We determined that the defendant stole property belonging to different owners "at the same time, from the same place, and under the same circumstances with the same intent." Id. Therefore, in Hearn, the fact that the property belonged to different owners was not dispositive. The Court in Hearn adopted the single larceny rule by concluding that it was the fact that the taking of the property occurred at the same time, same place, and under the same circumstances that prohibited charging the defendants with multiple counts of larceny:
We will align ourselves with the majority rule in this country because we *702 feel that to permit the dividing into several larcenies of objects which are the subject of larceny, although belonging to separate owners, when stolen at the same time, from the same place, and under the same circumstances with the same intent, would be violative of the spirit of the Constitution of the United States and the State of Florida that a man should not be put in jeopardy twice for the same offense.

Id. (emphasis supplied)[8].
Two years later, the Court distinguished Hearn in Hall v. State, 66 So.2d 863 (Fla. 1953). In Hall, the defendant stole cattle belonging to two separate owners from two separate pastures. We reaffirmed the holding of Green, that the takings of articles belonging to different owners at different times or from different places constitute distinct and independent larcenies. Id. at 864. Consequently, we rejected the defendant's argument that there was only one crime committed. See id.

OTHER JURISDICTIONS
Other jurisdictions have utilized variations on the time, place, or circumstances test enunciated by this Court. The Virginia Supreme Court in Jones v. Commonwealth, 218 Va. 757, 240 S.E.2d 658 (1978), for example, used a time and place test in addressing whether a defendant could be convicted of both robbery and grand larceny. In Jones, the evidence showed that the defendant entered a motel office and forced the clerk to surrender both money and the keys to the motel's courtesy car. The defendant then left the motel office and proceeded to steal the motel's courtesy car, which was located two hundred yards from the motel office. See id. at 660. The court affirmed the defendant's multiple convictions, stating that the "[l]arceny of the car, located two hundred yards away from the scene of the first theft, and the act underlying that offense occurred at a different place at a later point in time." Id. at 661. Thus, the court concluded that "the two thefts involved two separate and distinct acts of caption and two different acts of asportation." Id.
More recently, a Virginia appellate court has elaborated on this analysis by enunciating a five-factor test, including: (1) the location of the items taken; (2) the lapse of time between takings; (3) the general and specific intent of the taker; (4) the number of owners of the items taken; and (5) intervening events between the takings. See Millard v. Commonwealth, 34 Va.App. 202, 539 S.E.2d 84 (2000). In Millard, the court addressed whether the defendant could be convicted of multiple counts of larceny by false pretenses for presenting three checks with forged endorsements to a bank teller and receiving a single payment from the bank. See id. at 85. The court concluded that there was no evidence in the record from which to infer that the defendant's actions were not "done pursuant to a single criminal impulse and in the execution of a general fraudulent scheme." Id. at 86. Thus, the court remanded the case to the trial court with instructions to set aside two of the defendant's three convictions. See id.
Other states have attempted to limit the time, place, or circumstances test by adopting the "separate larceny doctrine." Under this approach, courts apply the "single larceny doctrine" to thefts from one owner, but make thefts from different owners chargeable as separate larcenies. See, e.g., State v. Callaghan, 33 Or.App. 49, *703 576 P.2d 14 (1978). Moreover, Kansas recently has adopted a broader version of the rule, which asks whether the larcenies are part of a "single impulse" or "single criminal design," regardless of any temporal or spatial separation. See State v. McClanahan, 251 Kan. 533, 836 P.2d 1164 (1992).
According to the District of Columbia Court of Appeals, whether a defendant can be convicted of separate crimes depends on whether there was evidence that the defendant "reached a `fork in the road,' leading to a `fresh impulse' which resulted in a separate offense." Maddox v. United States, 745 A.2d 284, 294 (D.C.2000). In making this determination of whether a defendant can be convicted of separate crimes, the District of Columbia Court of Appeals has stated:
If at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not.
Owens v. United States, 497 A.2d 1086, 1096 (D.C.1985). In Owens, the court observed that
[s]ome crimes, by their very nature, tend to be committed in a single continuous episode rather than in a series of individually chargeable acts. An ordinary assault, for examplethat is, an assault that is not accompanied by an intent to commit another offenseis usually such a crime. "The fact that a criminal episode of assault involves several blows or wounds, and different methods of administration, does not convert it into a case of multiple crimes for purposes of sentencing." Joyriding is another example of this type of continuing crime. Other crimes, are not so continuous. In the case of a robbery, for example, a separate charge may be sustained for each successive taking. A robberyor an attempted robbery, as in this casetends to be completed quickly and to leave the perpetrator at a fork in the road where he must consider whether to retreat or to invade another interest. For this reason robbery is often accompanied by other crimes.
Id. (citations omitted) (quoting Smith v. United States, 418 F.2d 1120, 1121 (D.C.Cir.1969)).
In contrast, in People v. Rush, 16 Cal. App.4th 20, 20 Cal.Rptr.2d 15 (1993), the California Court of Appeals defined broad parameters for the temporal and spatial scope of robbery. Rush held that robbery is a form of theft that is inherently spread over time, because it is composed of assault, taking, and escape. Further, robbery requires the taking of property from the "immediate presence" of the victim, which includes the area in which the victim has a reasonable expectation of control over his or her property. As an example of the breadth of this definition, a motor vehicle in a victim's driveway has been held to be "in the immediate presence" of the victim inside the house. See Rush, 20 Cal.Rptr.2d at 17 (citing People v. Bauer, 241 Cal.App.2d 632, 50 Cal.Rptr. 687 (1966)). This, combined with the temporal extension of robbery to escape, makes for a test that is easy to apply but would almost never allow a finding of distinct and separate acts. Therefore, in Rush, the court held the defendant could not be convicted of both robbery and grand theft for the taking of the victim's wallet, car keys, and motor vehicle, holding that "a defendant who steals various items by force or fear, in a continuing transaction, commits but one offense and the loot may not be splintered into separate counts of theft for *704 purposes of multiple conviction[s]." Id. at 17.
These jurisdictions exemplify the spectrum of approaches to the determination of whether the robbery and theft arise from a single criminal act. We reject the broad definition given by the California appellate court in Rush as inconsistent with our past jurisprudence. Indeed, we do not find that any one jurisdiction provides a superior analytical framework to this Court's time, place or circumstances inquiry. However, we do find four of the factors enunciated by the Virginia appellate court to be of assistance to the courts in conducting the time, place and circumstances analysis first enunciated in Hearn and its progeny: the location of the items taken, the lapse of time between takings, the number of owners of the items taken, and the intervening events between the takings.[9]

THIS CASE
We conclude, based on this Court's precedent, that in reaching a determination of the double jeopardy issue in a case involving a single victim's property, courts should look to whether there was a separation of time, place, or circumstances between the initial armed robbery and the subsequent grand theft, as those factors are objective criteria utilized to determine whether there are distinct and independent criminal acts or whether there is one continuous criminal act with a single criminal intent. In making this determination of whether there is a separation of time, place, or circumstances giving rise to distinct and independent acts, the courts should consider the location of the items taken, the lapse of time between takings, the number of owners of the items taken, and whether intervening events occurred between the takings.
In this case, Hayes first entered the victim's residence and robbed the victim of various items from inside the residence, including computers, cell phones, a beeper, a camera, and keys to the victim's motor vehicle. At that time, the robbery was complete. Second, Hayes exited the home and proceeded to steal the victim's motor vehicle. Only upon the taking of the vehicle did the grand theft of the motor vehicle occur. Thus, the taking of the items from inside the residence occurred at a different time and a different place than the taking of the motor vehicle. Although there was only a single victim in this case, and there were no intervening acts, we find that the robbery of various items from inside the residence was sufficiently separate in time, place and circumstances from Hayes' theft of the motor vehicle parked outside the victim's residence to constitute distinct and independent criminal acts.
We do not agree with Hayes' contention that Sirmons requires a different result in this case. In Sirmons, the robbery and grand theft of the same property occurred simultaneously, while the victim was immediately outside his motor vehicle. In other words, there was a single taking of a motor vehicle at knifepoint. In contrast, in this case, there were multiple takings of different property sufficiently separated as to time and place so as to constitute distinct and independent criminal acts. Thus, we conclude that Hayes' reliance upon Sirmons is misplaced.
We therefore disapprove the Fifth District's contrary decision in Castleberry. The facts in Hayes and Castleberry supporting *705 the armed robbery and grand theft charges are not distinguishable for purposes of a double jeopardy analysis.[10] Both cases involve the armed robbery of separate property, including car keys from the victim inside the premises, and a subsequent theft of the motor vehicle outside of the premises. Despite the fact that the crimes were committed during the same continuous sequence of events, we conclude that the defendant's convictions in Castleberry for armed robbery and grand theft of a motor vehicle were premised upon separate and independent criminal acts, separated in time, place, and circumstances. Therefore, we conclude that double jeopardy does not prohibit multiple convictions under these circumstances.

CONCLUSION
We recognize that in determining whether multiple convictions for robberies or thefts or both are predicated on distinct and independent criminal acts or a single criminal act, it is difficult to formulate a bright-line rule because the determination is often fact-specific. See Hearn, 55 So.2d at 560. Nevertheless, under the facts of this case, we approve the Third District's decision and hold that Hayes properly was convicted of both robbery and grand theft of a motor vehicle. We also approve of the First District's decision in Henderson and disapprove of the Fifth District's decision in Castleberry.
It is so ordered.[11]
WELLS, C.J., and SHAW, HARDING, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] The Third District also certified conflict with J.M. v. State, 709 So.2d 157 (Fla. 5th DCA 1998). See Hayes, 748 So.2d at 1045. However, J.M. is distinguishable "because the same property was charged as having been taken as a result of both the robbery and the theft (i.e., a motor vehicle and vehicle keys) and there was only one `taking' of that property charged and proven at trial." 709 So.2d at 157.
[2] Section 812.13, Florida Statutes (1997), provides in pertinent part:

(1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
(2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) If in the course of committing the robbery the offender carried a weapon, then the robbery is a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[3] Section 812.014, Florida Statutes (1997), provides in pertinent part:

(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.
(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
. . . .
(c) It is grand theft of the third degree and a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if the property stolen is:
. . . .
6. A motor vehicle, except as provided in paragraph (2)(a).
[4] In affirming Hayes' convictions, the Third District relied on its prior decision in Lattimore v. State, 571 So.2d 99, 100 (Fla. 3d DCA 1990). In Lattimore, the Third District rejected the defendant's contention that a double jeopardy violation occurred as a result of his convictions for both strong-arm robbery and grand theft of a motor vehicle. The Third District concluded that the defendant's theft of the victim's automobile was a separate, independent criminal act apart from the robbery in the victim's house, during which the defendant secured, among other things, the keys to the victim's automobile, and thereafter walked outside the house and stole the automobile. Id.
[5] Although the defendant in Henderson filed a petition for review in this Court, this Court has stayed Henderson pending our resolution of Hayes. See Henderson v. State, No. 01-385 (notice filed Feb. 20, 2001).
[6] Section 775.021(4)(a)-(b), Florida Statutes (1997), provides:

(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
[7] The dissenting opinion in Sirmons did not take issue with the conclusion that a single act was involved, but disagreed with the conclusion as to whether the Legislature intended to inflict separate punishments for robbery and grand theft, even when based on a single underlying criminal act. 634 So.2d at 156-57 (Grimes, J., dissenting).
[8] The majority of jurisdictions have followed the single larceny rule. See generally Daniel H. White, Annotation, Single or Separate Larceny Predicated Upon Stealing Property From Different Owners At The Same Time, 37 A.L.R.3d 1407 (1971 & Supp.2001).
[9] Although the Virginia court listed "general or specific intent" as a separate factor, we conclude that the better approach for making a single act/multiple act determination is to utilize objective criteria such as the time, place and circumstances.
[10] A decision of the Fifth District released after Castleberry, Taylor v. State, 751 So.2d 659, 662 (Fla. 5th DCA 1999), held that there was no double jeopardy violation in convictions for robbery and grand theft of a motor vehicle where there was a "sufficient temporal and spatial break" between the robbery inside the convenience store and the theft of the motor vehicle. Although the Fifth District in Taylor cited to its earlier decision in Castleberry, the court determined that the facts in Taylor were distinguishable from those in Castleberry. We conclude that the Fifth District's analysis in Taylor is consistent with our decision in this case, but also conclude that Castleberry is not factually distinguishable from the instant case for double jeopardy purposes.
[11] We decline to address the other issue raised by Hayes as it is outside the scope of the conflict issue. See Friedrich v. State, 767 So.2d 451, 452 n. 1 (Fla.2000).