DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**JAMES TINDAL,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D11-4593

[August 20, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Marc H. Gold, Judge; L.T. Case No. 09-2708 CF10A.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Cynthia L. Comras, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

James Tindal appeals his judgment and sentence after a jury found him guilty of burglary of a dwelling, grand theft, and two counts of petit theft. Tindal raises four issues on appeal. We affirm, without discussion, the trial court's denial of Tindal's motion for judgment of acquittal as to the sufficiency of the State's evidence establishing Tindal's involvement as a principal to the crimes. However, we reverse the trial court's denial of Tindal's motion for judgment of acquittal as to the charge of grand theft, reverse on the grounds of double jeopardy, and reverse as to one of the conditions of probation ordered by the trial court. Because a double jeopardy issue is raised, we discuss the facts of the crime with some detail.

*Factual Background and Trial Proceedings*

On the date of the offense, officers followed a black Lincoln Navigator driven by Tindal. Tindal's co-defendant was in the passenger seat. Prior to that date, officers placed a tracking device on the Navigator based on information that the vehicle had been used in connection with other

burglaries. On the date of the offense, officers both physically followed the vehicle and tracked it using a GPS device and a laptop computer.

Officers observed the Navigator drive by a particular house three times. The first two times, a work van was in front of the house, and the Navigator drove away. The third time, the work vehicle was gone, and the Navigator pulled into the driveway of the house. Officers observed Tindal walk to the front door, knock, and wait. When no one answered the door, Tindal walked to the gated area of the house, opened the gate, and went through. After a while, Tindal returned through the gate and back to the Navigator.

When Tindal returned to the Navigator, his co-defendant walked through the same gate. An officer observed the co-defendant bend down, appearing to pick something up off the ground, then, within seconds, heard a loud bang and the sound of glass shatter. A window, facing out to the gated area, was later found broken.

While the co-defendant disappeared behind the gate, officers saw Tindal "slouched down" in the Navigator on his phone. When the co-defendant returned to the Navigator, he was carrying a red pressure washer. After the co-defendant put the pressure washer into the back of the Navigator, he disappeared through the gate once again. He returned back to the Navigator, this time with what appeared to be a laptop computer under his shirt. The Navigator then left the house, but the officers stopped the vehicle before it was able to drive off.

Officers searched the Navigator and found the red pressure washer in the back of the vehicle and the laptop in another area of the vehicle. Tindal and the co-defendant were arrested and placed in the back of a patrol vehicle for transport to the jail. Officers searched the patrol vehicle prior to placing Tindal and the co-defendant inside, and also searched the co-defendant. Once the patrol vehicle arrived at the jail, jewelry was found under the seat near where Tindal was sitting.

At trial, the owner of the laptop testified:

Q: What was the purchase price of that laptop computer?
A: Between [$]1,800 and maybe [$]2,200 at the time.
Q: Did you do work on that laptop computer?
A: I did.
Q: And if I had asked you to go out and buy another one that day, on the 11th day of February, 2009, how much would it have cost you to replace that laptop?
A: Probably about the same, about [$]1,800 to [$]2,200.

2

On cross-examination, the owner was asked whether he knew anything about the depreciation value of the laptop from 2007, when he purchased the laptop, to 2009. The owner said that he did not know.

At the close of the State's case-in-chief, Tindal moved for a judgment of acquittal. Regarding grand theft, Tindal argued that the State failed to prove that the laptop had a value over $300 to support a conviction for grand theft, and that the owner's testimony regarding the value of the laptop was insufficient proof. The trial court reserved ruling on this issue.[1] Tindal did not put on any witnesses or evidence.

The jury returned a verdict of guilty as to all counts. Tindal was adjudicated and placed on probation as part of his sentence. As a condition of his probation, the trial court ordered that Tindal "must be gainfully employed or in vocational training."

On appeal, Tindal argues that the State failed to prove that the value of the laptop was over $300, that the convictions for grand theft and two counts of petit theft violate the prohibition against double jeopardy, and that the above-stated condition of probation imposed by the trial court was unconstitutional. We agree.

*Legal Analysis*

*Grand Theft of the Laptop (Count 2)*

In count 2, Tindal was charged under section 812.014(2)(c)1., Florida Statutes (2009), with grand theft of a laptop computer. The State was required to prove that the value of the laptop was greater than $300 at the time it was stolen. *See Mansfield v. State*, 954 So. 2d 74, 76 (Fla. 4th DCA 2007). Tindal contends the trial court erred in denying his motion for judgment of acquittal because the State introduced insufficient evidence that the laptop had a value of $300 when stolen.

When reviewing a trial court's denial of a motion for judgment of acquittal, "the appellate court determines whether the [S]tate introduced competent substantial evidence to support the guilty verdict." *Gilbert v. State*, 817 So. 2d 980, 982 (Fla. 4th DCA 2002). In moving for acquittal, the defendant admits all facts introduced in evidence, and every fair and

_____

[1] Although the trial court reserved ruling on Tindal's motion for judgment of acquittal and never made an express ruling on the motion, it implicitly denied the motion later by adjudicating Tindal on the grand theft charge. *See R.R. v. State*, 137 So. 3d 535, 537 (Fla. 4th DCA 2014).

reasonable inference must be drawn in favor of the State. *Maglio v. State*, 918 So. 2d 369, 374 (Fla. 4th DCA 2005). A motion for judgment of acquittal should be denied "unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Ackon v. State*, 14 So. 3d 1146, 1148 (Fla. 4th DCA 2009) (quoting *Darling v. State*, 808 So. 2d 145, 155 (Fla. 2002)) (internal citations omitted).

"'Value' is an essential element of grand theft that must be proven by the State beyond and to the exclusion of every reasonable doubt." *Sanchez v. State*, 101 So. 3d 1283, 1286 (Fla. 4th DCA 2012). Section 812.012(10)(a)1. states that "[v]alue means the market value of the property at the time and place of the offense, or, if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the offense." § 812.012(10)(a)1., Fla. Stat. (2009).

In *Lucky v. State*, 25 So. 3d 691, 692 (Fla. 4th DCA 2010), we outlined the two prong-test for determining whether the evidence of value elicited by the State at trial is sufficient to withstand a motion for judgment of acquittal. "First, the court must ascertain whether the person testifying is competent to testify to the value of the property," and second, "if the person is competent, the court must ascertain whether the evidence adduced at trial is sufficient to prove that the property was worth over $300 at the time of the theft." *Id.* (citations omitted).

The evidence regarding the value of the laptop came from the testimony of the owner and pictures introduced into evidence.

Although presumed competent to testify as to the value of stolen property with regard to the first prong, the owner must demonstrate personal knowledge of the characteristics of the stolen property, such as the quality, cost, and condition of the property. *Id.* 692; *Sanchez*, 101 So. 3d at 1286.

Regarding the second prong, "[a]bsent direct testimony of the market value of the property, proof may be established through the following factors: original market cost, manner in which the item has been used, its general condition and quality, and the percentage of depreciation since its purchase or construction." *Lucky*, 25 So. 3d at 692 (quoting *Gilbert*, 817 So. 2d at 982). Evidence of the purchase price and age of the stolen item, without more, is insufficient. *K.W. v. State*, 983 So. 2d 713, 715 (Fla. 2d DCA 2008). The insufficiency of evidence of the purchase price and age "is not remedied by the addition of bare evidence that the item was in working order when stolen." *Id.*

In this case, the only testimony the owner gave was that the laptop was purchased about two years prior to the theft for a price between $1,800 and $2,200, and that he used the computer for work. There was no direct testimony of the fair market value or the condition of the laptop at the time it was stolen. On cross-examination, the owner denied knowing the depreciated value of the two-year-old laptop. The State argues that it proved the condition of the laptop by entering photographs of the computer into evidence. However, in *Gilbert* we held that, despite the fact that the State entered photographs of the items stolen into evidence, "the state failed to *elicit testimony* on the condition of the property at the time of the theft." 817 So. 2d at 983 (emphasis added). Therefore, the photographs alone were not enough to establish proof of the condition or depreciation of the laptop. Proof of cost when purchased, age since purchase, and vague testimony of use was insufficient proof of the market value of the laptop.

The owner's testimony that the replacement cost was "probably the same" as the purchase price was also legally insufficient for two reasons. First, "[r]eplacement cost . . . is not appropriate under the theft statute unless the State first presents evidence that the market value could not be satisfactorily ascertained." *A.D. v. State*, 30 So. 3d 676, 678 (Fla. 3d DCA 2010) (footnote omitted). No evidence was presented that the market value of the laptop could not be satisfactorily ascertained. Second, the testimony was insufficient because "evidence is insufficient to prove the value of the property is over $300, where the value of the property is estimated and no other proof is presented." *Gilbert*, 817 So. 2d at 982.

Accordingly, we reverse the trial court's denial of Tindal's motion for judgment of acquittal, with instructions that the trial court reduce the charge of grand theft to a second degree petit theft.[2] However, as stated below, the trial court may elect to vacate the judgment and sentence in its entirety.

*Double Jeopardy (Counts 2, 3, and 4)*

In count 2 of the information, Tindal was charged with grand theft of a laptop; in count 3, grand theft of a pressure washer; and in count 4, grand theft of jewelry. After the State failed to provide evidence as to the value of the pressure washer and jewelry, the State conceded at trial that counts 3 and 4 should be reduced to misdemeanor petit thefts.[3]

---

[2] The proof of value also does not support a conviction for first degree petit theft.
[3] The record is unclear as to whether the trial court reduced the counts to first degree or second degree petit thefts. Since the charges should have been reduced

5

Tindal also challenges his convictions for grand theft (by this opinion now reduced to petit theft) and two counts of petit theft. He argues that convictions for all three thefts violate the prohibition against double jeopardy. We agree.

Although Tindal failed to object on the basis of double jeopardy at trial, a double jeopardy challenge can be "raised by appellate counsel for the first time on appeal despite the lack of an objection on this ground below." *Binns v. State*, 979 So. 2d 439, 441 (Fla. 4th DCA 2008) (citing *Tannihill v. State*, 848 So. 2d 442, 444 (Fla. 4th DCA 2003)). This is because "a violation of double jeopardy is a fundamental error which can be raised for the first time on appeal." *Tannihill*, 848 So. 2d at 444.

"Because double jeopardy issues involve purely legal determinations, the standard of review is de novo." *Rimondi v. State*, 89 So. 3d 1059, 1060 (Fla. 4th DCA 2012) (quoting *Benjamin v. State*, 77 So. 3d 781, 783 (Fla. 4th DCA 2011)) (internal quotation marks omitted).

Our supreme court has stated that:

> The prevailing standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature "intended to authorize separate punishments for the two crimes." Absent a clear statement of legislative intent to authorize separate punishments for two crimes, courts employ the *Blockburger* test, as codified in section 775.021, Florida Statutes (1997), to determine whether separate offenses exist.

*State v. Paul*, 934 So. 2d 1167, 1171-72 (Fla. 2006) (quoting *Gordon v. State*, 780 So. 2d 17, 19-20 (Fla. 2001)) (citations omitted). In regards to section 812.014, Florida Statutes, the supreme court has determined that the statute

> constitutes a "clear statement of legislative intent" that convictions and sentences for multiple theft offenses arising from the same criminal episode are permitted. . . . . Section 812.014 is structured so that *thefts of the various enumerated properties* constitute separate offenses. The Legislature intended these thefts to be separate offenses and to constitute different crimes. The types of property specifically

to second degree petit thefts, we instruct the trial court to clarify this in the judgment on remand.

6

enumerated demonstrate that strong policy concerns motivated the Legislature to single out these theft offenses for separate punishment. *See, e.g.,* § 812.014(2)(c)(5), Fla. Stat. (2003) (theft of a firearm); § 812.014(2)(c)(8), Fla. Stat. (2003) (theft of a fire extinguisher); § 812.014(2)(c)(11), Fla. Stat. (2003) (theft of a stop sign).

*Kelso v. State*, 961 So. 2d 277, 281-82 (Fla. 2007) (emphasis added).

In this case, none of the stolen items (laptop, pressure washer, jewelry) are of a type of property that the legislature intended for separate punishment. Thus, we employ the *Blockburger* test, as codified in section 775.021, Florida Statutes (2009), to determine whether multiple convictions for the thefts are appropriate. However, "[b]ecause the *Blockburger* test applies to crimes occurring in only 'one criminal transaction or episode,' the first step is to review whether there was one criminal episode or multiple episodes." *Paul*, 934 So. 2d at 1172.

In the context of theft offenses, two supreme court opinions, *Hearn v. State*, 55 So. 2d 559 (Fla. 1951), and *Hayes v. State*, 803 So. 2d 695 (Fla. 2001), give guidance as to whether the multiple thefts in this case occurred during one criminal episode.

In *Hearn*, our supreme court addressed whether the defendant could be convicted of multiple counts of larceny for theft of livestock owned by different owners. 55 So. 2d at 560. The evidence was that eleven head of cattle were grazing on the same range. *Id.* Although the opinion does not state how many owners were involved, not all the cattle were owned by same person or entity. *Id.* At the time of the theft, the cattle were rounded up and placed in the same truck. *Id.* In affirming multiple convictions of larceny, the court recognized the longstanding principle in this State that

> where property is stolen from the same owner or from different owners at different times or places or as a result of a series of acts, separated in either time, place or circumstances, one from the other each taking is a separate and distinct offense . . . . If the converse is true, then it should follow that where several articles are taken at the same time and place as one continuous act, though owned by different people, the offense is a single larceny.

> Each case of this nature must be determined by the facts and circumstances of the particular case. There is some conflict in the cases, but the clear weight of authority is to the effect that the stealing of several articles at the same time and place

7

as one continuous act or transaction is a single offense, even though the property belongs to different owners, for the reason that it is only a single act or taking.

*Id.* The court went on to observe:

Larceny is an offense against the public, that is against the State, and the offense is the same whether the property stolen belongs to one person or several persons jointly or to several persons each owning separate parts thereof. The names of the owners of the stolen property constitute no part of the offense. They are stated in the information primarily as a matter of description for the purpose of identification and to show ownership in a person or persons other than the accused.

*Id.* at 561. It then concluded:

We will align ourselves with the majority rule in this country because we feel that to permit the dividing into several larcenies of objects which are the subject of larceny, although belonging to separate owners, *when stolen at the same time, from the same place, and under the same circumstances with the same intent, would be violative of the spirit of the Constitution of the United States and the State of Florida that a man should not be put in jeopardy twice for the same offense.*

*Id.* (emphasis added).

Fifty years later, the court discussed *Hearn* and the principles of double jeopardy applicable to theft of multiple items in deciding *Hayes.* 803 So. 2d at 701. In *Hayes,* the issue was whether the defendant may be separately convicted of both armed robbery and grand theft of a motor vehicle where the defendant stole various items from inside a victim's residence, including the victim's car keys, and then proceeded outside the residence to steal the victim's motor vehicle utilizing these keys. *Id.* at 696. After discussing *Hearn* with some detail and examining case law from other jurisdictions on the issue, the court concluded that in *Hearn,* it had adopted "the single larceny rule," which considers four factors in determining whether theft of multiple items may be charged as separate crimes: (1) the location of the items taken, (2) the lapse of time between takings, (3) the number of owners of the items taken, and (4) the intervening events between the takings. *Id.* at 704.

8

In this case, the State argues that the theft counts did not arise out of the same criminal transaction because there were different victims and there was a temporal break between the takings. As both *Hearn* and *Hayes* make clear, the fact that there were different victims in this case is a factor to be considered, however, it is certainly not dispositive. We view the other three factors discussed in *Hayes*, the location of the items taken, the lapse of time between the takings, and the intervening events between the takings, to be more dispositive. The other three factors all relate to the State's temporal break argument.

All of the items were taken from the same house, thus we conclude the items were taken from the same location. Although the co-defendant made two separate trips behind the gate, the trips were consecutive acts of traveling back and forth, with no significant pauses in between and no intervening events to suggest one episode of stealing stopped and another began. If Tindal had not served as the lookout and instead accompanied the co-defendant into the house, all of the items could have been removed and placed in the Navigator in one trip. Similar to *Hearn*, all of the items were *stolen at the same time, from the same place, and under the same circumstances with the same intent*. Thus, we determine that the theft of the pressure washer, laptop, and jewelry arose out of a single criminal episode.

"If the charges are not predicated on distinct acts and have occurred within the same criminal episode, we must next decide if the charges survive a same elements test as defined by section 775.021, Florida Statutes (2008), commonly referred to as the *Blockburger* analysis." *Partch v. State*, 43 So. 3d 758, 760 (Fla. 1st DCA 2010) (footnote omitted). Section 775.021(4)(b) states:

> (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
>
> 1. Offenses which require identical elements of proof.[4]
> 2. Offenses which are degrees of the same offense as provided by statute.
> 3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

---

[4] As pointed out in *Hearn* the identity of the owner of the stolen property is not an element of the crime.

9

§ 775.021(4)(b), Fla. Stat. (2009). Since we have reversed the count of grand theft with instructions that the count be reduced to a second degree petit theft, and all of the counts of petit theft require identical elements of proof, the facts of the instant case fit the first exception under section 775.021(4)(b).

Therefore, we reverse and remand the case with instructions that the trial court amend and vacate the judgments and sentences as necessary so that Tindal stands convicted of only one count of second degree petit theft. *See Benjamin v. State*, 77 So. 3d 781, 784 (Fla. 4th DCA 2011) (quoting *Binns v. State*, 979 So. 2d 439, 442 (Fla. 4th DCA 2008)) ("When dual convictions of the same degrees are found to violate double jeopardy, the proper remedy is to 'vacate the conviction and sentence on one of those counts.'").

*Condition of Probation*

Tindal also challenges the trial court's sentence as to the condition of probation that he "must be gainfully employed or in vocational training." We agree that this is an illegal condition of probation.

Although "[a] trial court has the authority to order a defendant actively to seek full-time gainful employment during a term of probation," *Vezina v. State*, 644 So. 2d 602, 603 (Fla. 1st DCA 1994), the trial court in the instant case ordered Tindal to do more than "actively seek" gainful employment or vocational training; it ordered that he actually *be* gainfully employed or in vocational training. The condition that the trial court placed on Tindal is similar to a condition placed on the defendant in *Walls v. State,* 596 So. 2d 811, 812 (Fla. 4th DCA 1992). In *Walls*, we reviewed a condition placed on the defendant that he "maintain full-time employment of at least thirty-five hours per week." *Id.* In reviewing this condition, we stated:

> The trial court's requirement that [the defendant] maintain full-time employment is sufficiently egregious to be the equivalent of fundamental error. Factors beyond [the defendant]'s control, for example, the poor economy, may prevent him from satisfying that element of his probation. As such, the trial court erred in placing the full-time employment requirement on [the defendant]. The court should have instead ordered [the defendant] to *maintain or actively seek* gainful employment.

10

*Id.* (emphasis added).

Since the condition placed on Tindal was improper, we instruct the trial court to modify that condition of Tindal's sentence consistent with this opinion. *See Boudreaux v. State*, 578 So. 2d 457, 458 (Fla. 1st DCA 1991).

*Affirmed in part, reversed in part.*

STEVENSON and TAYLOR, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

11