NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


CHRISTOPHER LEON JACOBS,  )
                          )
          Appellant,      )
                          )
v.                        )          Case No. 2D17-2437
                          )
STATE OF FLORIDA,         )
                          )
          Appellee.       )
_____)

Opinion filed May 17, 2019.

Appeal from the Circuit Court for
Hillsborough County; Lisa D. Campbell,
Judge.

Howard L. Dimmig, II, Public Defender, and
Maureen E. Surber, Assistant Public
Defender, Bartow, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Katie Salemi-Ashby,
Assistant Attorney General, Tampa, for
Appellee.


ATKINSON, Judge.

Christopher Leon Jacobs was found guilty by a jury of one count of

aggravated stalking and two counts of violation of a stalking injunction.  On appeal,

Jacobs argues that the dual convictions for violation of a stalking injunction violate double jeopardy. We disagree and affirm.

On March 29, 2016, Jacobs entered the Palm River Laundromat, where the victim was employed, and asked if he could use the restroom. The victim said no because the restroom was meant for customers only. Jacobs responded, "I'll shoot you, bitch." Over the next several months, Jacobs entered the laundromat and threatened the victim. The victim then applied for an injunction against Jacobs.

On July 29, 2016, at 10:00 a.m., Deputy Craig Martin served the injunction on Jacobs, explaining that the injunction prohibited Jacobs from contacting the victim at her place of employment and from going within 500 feet of the perimeter. After reading the injunction, Jacobs indicated he understood. That same day, while the victim was outside the laundromat, Jacobs threatened her from across the street. Jacobs was standing about sixty feet away from the victim. At 10:30 a.m., the victim flagged down Deputy Jared Lee and told him that Jacobs yelled at her from across the street. After Deputy Lee located Jacobs, Jacobs admitted that he knew about the injunction and that he yelled out, "Bitch, I'm coming to get you" while pounding on his chest with both fists.

On August 18, 2016, Jacobs was charged with one count of aggravated stalking and two counts of violation of stalking injunction, one for being within 500 feet of the victim and the other for communicating with the victim. After a jury found him guilty as charged, Jacobs was sentenced to 28.8 months in prison on count one and to time served on the remaining counts. This appeal followed.

A double jeopardy violation may be raised for the first time on appeal because it amounts to fundamental error. Eichelberger v. State, 949 So. 2d 358, 359

(Fla. 2d DCA 2007) (citing Marinelli v. State, 706 So. 2d 1374, 1375 n.1 (Fla. 2d DCA 1998)).  The double jeopardy clauses in the Florida and United States Constitutions protect individuals from being put in jeopardy more than once "for the same offense." Art. I, § 9, Fla. Const.; Amend. V, U.S. Const. ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]"); Valdes v. State, 3 So. 3d 1067, 1069 (Fla. 2009) ("[T]he Constitution prohibits subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense.").  "[W]here a defendant is convicted multiple times under the same statute for acts that occurred during the course of a single criminal episode, a 'distinct acts' test is used" to determine whether the convictions violate double jeopardy, but "where a defendant is convicted under multiple statutes for one act, the 'different elements' test applies."  Graham v. State, 207 So. 3d 135, 141 (Fla. 2016) (discussing Blockburger v. United States, 284 U.S. 299 (1932)).

Here, the "distinct acts" test applies because Jacobs was convicted multiple times under section 784.0487(4)(a), Florida Statutes (2016), for acts that occurred during a single criminal episode.  Section 784.0487(4)(a) provides the following:

> A person who willfully violates an injunction for protection against stalking or cyberstalking issued pursuant to s. 784.0485, or a foreign protection order accorded full faith and credit pursuant to s. 741.315, by:
>
> 1. Going to, or being within 500 feet of, the petitioner's residence, school, place of employment, or a specified place frequented regularly by the petitioner and any named family members or individuals closely associated with the petitioner;
>
> 2. Committing an act of stalking against the petitioner;

3. Committing any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to the petitioner;

4. <u>Telephoning, contacting, or otherwise communicating with the petitioner</u>, directly or indirectly, unless the injunction specifically allows indirect contact through a third party;

5. Knowingly and intentionally coming within 100 feet of the petitioner's motor vehicle, whether or not that vehicle is occupied;

6. Defacing or destroying the petitioner's personal property, including the petitioner's motor vehicle; or

7. Refusing to surrender firearms or ammunition if ordered to do so by the court,

commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083, except as provided in paragraph (b).

(Emphasis added.) Pursuant to the "distinct acts" test, a single criminal impulse may be punished only once "no matter how long the action may continue," while separate, successive impulses may be punished separately "even though all unite in swelling a common stream of action." <u>Graham</u>, 207 So. 3d at 139 (quoting <u>Blockburger</u>, 284 U.S. at 302). In determining whether acts are "distinct," courts consider "factors such as whether there was (1) a temporal break between the acts, (2) intervening acts, (3) a change in location between the acts; and/or (4) a new criminal intent formed." <u>Partch v. State</u>, 43 So. 3d 758, 761 (Fla. 1st DCA 2010) (citing <u>Hayes v. State</u>, 803 So. 2d 695, 700 (Fla. 2001)).

Jacobs' two violations of the injunction were two distinct criminal acts. <u>See</u> <u>State v. Meshell</u>, 2 So. 3d 132, 135 (Fla. 2009). By going to or being within 500

- 4 -

feet of the victim's workplace, Jacobs committed "a criminal act distinctively different from" his contacting or otherwise communicating with the victim. See id. at 136 ("Because the oral sex described in Count 3 is a criminal act distinctively different from the vaginal penetration or union in Count 1, there is not a double jeopardy violation."); § 784.0487(4)(a)1., 4. (prohibiting the "[g]oing to, or being within 500 feet of" the victim's "place of employment" and the "[t]elephoning, contacting, or otherwise communicating with the" victim, respectively). As such, his convictions for each do not constitute double jeopardy for the same offense.

The dissent contends that there was only one violation of the statute as the facts support a "single criminal impulse to violate the injunction." (Emphasis added.) However, there are several ways to violate the statute prohibiting violations of injunctions. See § 784.0487(4)(a)1.–7. And convictions for multiple violations of separately enumerated acts proscribed by the same statute do not violate double jeopardy—even if they are committed during the same criminal episode—as long as each is based on a "distinct criminal act[]." See Meshell, 2 So. 3d at 135 (finding commission of two of the various sex acts proscribed in section 800.04(4), Florida Statutes, during the same criminal episode constituted distinct acts such that double jeopardy did not bar punishment for each). "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. If the latter, there can be but one penalty." Id. Here, it is the former. The language of section 784.0487(4) indicates that willful violation of an injunction can be "violated in multiple, alternative ways," each of which can be punished as separate offenses if they constitute distinct criminal acts. Meshell, 2 So. 3d at 135

(quoting Saavedra v. State, 576 So. 2d 953, 956–57 (Fla. 1st DCA 1991)) (finding double jeopardy did not prohibit separate punishment for the two different ways the defendant committed lewd and lascivious battery in violation of section 800.04(4) during the same episode).[1]

The dissent identifies the lack of temporal break between the two violations (which arguably occurred simultaneously when Jacobs yelled at the victim from a distance of less than 500 feet of her workplace) as support for its conclusion that there was only one violation of the statute. However, even violations that occur simultaneously can be punished separately without violating the double jeopardy prohibition if each commission is of a separate character and type. See State v. Drawdy, 136 So. 3d 1209, 1214 (Fla. 2014) (finding double jeopardy did not prohibit convictions for both lewd or lascivious molestation and sexual battery after the defendant "touched the victim's breasts during vaginal penetration," each of which were

---

[1]The dissent dismisses the State's reliance on Meshell by explaining that the supreme court in Graham cleared up confusion created by the Meshell opinion, which had conflated the "distinct acts" and the "different elements" tests. But that does not mean that Meshell is inapposite. Graham did not impugn the outcome of Meshell, which supported its conclusion with the "distinct acts" test but also seemed to rely on the "different-elements" test. Graham merely pointed out that the latter test was inapplicable and unnecessary because both of the convictions in Meshell were for violations of the same statute. The holding of Meshell is not reliant on the "different elements" test and is very much applicable to this case: "Because the oral sex described in Count 3 is a criminal act distinctively different from the vaginal penetration or union in Count 1, there is not a double jeopardy violation." Meshell, 2 So. 3d at 136; cf. Graham, 207 So. 3d at 141 (affirming a district court that reached "the correct result" when it concluded that a "defendant's dual convictions under the lewd or lascivious molestation statute did not violate double jeopardy" even though the district court appeared to have "improperly utilize[d] aspects of the 'different elements' test" and noting that the district court "only needed to focus on whether each act that violated the statute was distinct"); Partch, 43 So. 3d at 762 ("Had distinct acts been found, the analysis would end here" without proceeding to the "same elements test.").

offenses "of a separate character and type" constituting "distinct criminal acts" (quoting Meshell, 2 So. 3d at 136) (emphasis added)).

It is not necessary for the two acts to be separated by a temporal break or a change in location in order for them to be considered distinct criminal acts. Nonetheless, such temporal and spatial separation arguably does exist in this case. The violation of subsection 1. occurred when Jacobs crossed the line demarcating where he was and was not allowed to be—within 500 feet of the victim's place of employment. The violation of subsection 4. occurred sometime thereafter when he began communicating with the victim when he was within sixty feet of the laundromat where she worked. The temporal break was whatever time it took for Jacobs to traverse the 440 feet to the point at which he began yelling at her.

However, even if he had been communicating with the victim at the exact moment he first came within 500 feet of the victim's workplace (say, by use of a cell phone), that lack of temporal or spatial separation would not give rise to a double jeopardy violation. Each act is of a separate character and type, and each is born of a separate impulse. See Drawdy, 136 So. 3d at 1212 ("The differences in the character and type of crime proven are as important as the spatial and temporal aspects when considering whether multiple punishments are appropriate." (quoting Murphy v. State, 49 So. 3d 295, 298 (Fla. 5th DCA 2010))).[2] In other words, the impulse to put one foot

_____

[2]By the dissent's rationale, Jacobs could not be convicted separately for two offenses even if he had been lurking behind a dumpster in the parking lot of the victim's workplace while sending her text messages from his phone. An unavoidable consequence of the dissent's conclusion is that a defendant who commits any of the offenses enumerated in subsections 2. through 7. cannot also be convicted of violating subsection 1. if they were committed within 500 feet of the victim's workplace. The language of the constitution, which only protects against double jeopardy for the same

- 7 -

in front of the other enough times (or keep one's foot on the accelerator long enough) to transport ones' self to within 500 feet of the victim's place of employment is <u>separate and distinct</u> from the impulse to open one's mouth and yell at her.  <u>See Graham</u>, 207 So. 3d at 139 ("If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." (quoting <u>Blockburger</u>, 284 U.S. at 302)).

Jacobs chose to place himself within 500 feet of the victim's workplace. Then, he chose to communicate with her.  Even if he was committing both violations at the exact same time, they are distinct acts separately proscribed by the statute under which he was convicted.  <u>Cf.</u> <u>Meshell</u>, 2 So. 3d at 134 ("Distinct acts of sexual battery do not require a 'temporal break' between them to constitute separate crimes."). Accordingly, we affirm Jacobs' convictions and sentences for one count of aggravated stalking and two counts of violation of a stalking injunction.

Affirmed.

LUCAS, J., Concurs.
KHOUZAM, J., Dissents with opinion.

---

<u>offense</u>, and of the statute, by which the legislature created separate offenses for various ways in which an injunction is violated, dictates otherwise—that the distinct acts comprising these criminal episodes can be punished separately, despite their lack of spatial or temporal separation.  <u>See Meshell</u>, 2 So. 3d at 135–36 (finding no violation of double jeopardy where the defendant committed "distinct criminal acts that the Florida Legislature has decided warrant multiple punishments").

KHOUZAM, Judge, Dissenting.

Although I agree that the "distinct acts" test applies here, I believe that the majority has misapplied this test. In my view, correctly applying the "distinct acts" test in this case leads to the conclusion that Jacobs' dual convictions for violation of a stalking injunction run afoul of the prohibition against double jeopardy. Accordingly, I would reverse.

The majority has accurately explained the basic principles of the "distinct acts" test, which applies here because Jacobs was convicted multiple times under the same statute for acts that occurred within the same criminal episode. The "distinct acts" test provides that where a course of action is prohibited, only one punishment is appropriate, because a single criminal impulse may be punished only once "no matter how long the action may continue." Graham v. State, 207 So. 3d 135, 139 (Fla. 2016) (quoting Blockburger v. United States, 284 U.S. 299, 302 (1932)). And conversely, where an individual criminal act is prohibited, each act may be punished separately, even where successive criminal impulses "unite in swelling a common stream of action." Id. But "not all charges arising out of different acts occurring within the same criminal episode will rise to the level of 'distinct' acts and allow for a finding of multiple offenses." Partch v. State, 43 So. 3d 758, 761 (Fla. 1st DCA 2010). Rather, the determination of whether acts are "distinct" should be based on "factors such as whether there was (1) a temporal break between the acts, (2) intervening acts, (3) a change in location between the acts; and/or (4) a new criminal intent formed." Id. (citing Hayes v. State, 803 So. 2d 695, 700 (Fla. 2001)). There is no bright-line rule because the inquiry into whether acts are "distinct" is fact-specific. Hayes, 803 So. 2d at 705.

Turning to the facts of this case, Jacobs' dual convictions for violation of a stalking injunction were based on (1) being within five hundred feet of the victim and (2) contacting the same victim. Both charges stemmed from an approximately thirty-minute time period in which Jacobs was served with the injunction and then proceeded to violate that injunction by approaching the victim and yelling at her. Jacobs was apprehended shortly thereafter and admitted not only that he had received the injunction but also that he had yelled "bitch, I'm coming to get you" while pounding his chest with both fists. The distance between Jacobs and the victim was about sixty feet.

Jacobs' acts of approaching the victim and yelling at her took place essentially simultaneously or, at most, within the same short time period. There is nothing in the record to suggest that there was a temporal break between them. Nothing in the record suggests that there was a change in location between the acts. Nothing in the record suggests that there were any intervening acts between Jacobs approaching and yelling at the victim. The acts of approaching and yelling were both directed at the same victim. Taken together, these facts indicate a single criminal impulse to violate the injunction, with no new criminal intent formed between the acts. Accordingly, the evidence supported only one count of violation of a stalking injunction.

The majority suggests that the structure and plain language of section 784.0487(4) dictate that each of the multiple ways the statute can be violated constitutes a distinct criminal act. But where a defendant is convicted multiple times under the same statute, courts should look to the unique facts of the case at hand--not the structure or language of the single statute--to determine whether the offenses constitute "distinct acts" that would justify multiple punishments. Analyzing the statutory

- 10 -

language is part of the "different elements" test, which does not apply here because Jacobs was convicted multiple times under the same statute. See Graham, 207 So. 3d at 139-140. Where the legislature has set forth an offense in a single statutory section, it is self-evident that the legislature only intended to create a single offense. The question then becomes whether the facts of the case indicate that the defendant's acts were distinct enough to justify multiple punishments.

The majority further relies on State v. Meshell, 2 So. 3d 132 (Fla. 2009), for the proposition that where a statute can be violated in multiple, alternative ways, each of those violations constitute a distinct act of a separate type and character that can be punished separately without running afoul of double jeopardy principles--even where the acts occur simultaneously. Id. at 134-35; see also State v. Drawdy, 136 So. 3d 1209, 1214 (Fla. 2014). However, while I agree that the Meshell court ultimately reached the correct result, the supreme court clarified in Graham that it had created confusion in Meshell by conflating the two different tests set forth in Blockburger. See Graham, 207 So. 3d at 140. Accordingly, to the extent that Meshell applied the "different elements" test in a case involving multiple offenses charged under the same statute, it is no longer good law. By focusing on the language of section 784.0487(4) in determining whether Jacobs' offenses were "distinct acts," the majority has applied the part of Meshell that has since been disapproved.

And finally, to the extent that the majority did consider the unique facts of this case, I disagree with the majority's reasoning. As already discussed above, Jacobs' actions indicate a single criminal impulse to violate the injunction. This conclusion is limited to the facts at hand and does not dictate that separate punishments would never

be appropriate for any two acts committed during the same criminal episode and charged under section 784.0487(4). There may be circumstances where two simultaneous acts charged under section 784.0487(4) could be considered distinct and separately punishable. To use one of the majority's examples, a defendant's acts of lurking behind a dumpster in the parking lot of the victim's workplace while sending her text messages from his phone <u>could</u> be considered distinct, depending on the full record before the court. Conversely, it appears that under the majority's analysis, acts falling under different subsections of section 784.0487(4) would always be considered distinct acts, regardless of the facts of the case.

Moreover, this is not a case where simultaneous acts should be considered distinct. Unlike this case, the cases on which the majority relies each involved distinct sexual acts that occurred essentially simultaneously during a sexual battery. In <u>Meshell</u>, the defendant was convicted of two counts of lewd and lascivious battery for penetrating or having union with the victim's vagina and with his penis having union with the victim's mouth, acts which occurred at approximately the same time. <u>Id.</u> at 134. In <u>Drawdy</u>, the defendant "was convicted of sexual battery for penetrating the victim's vagina with his penis. He was convicted of lewd or lascivious molestation for intentionally touching the victim's breasts in a lewd or lascivious manner during the vaginal penetration." <u>Id.</u> at 1214. Considering these facts at least in part, the supreme court held that the defendants' acts were distinct although there was no temporal break between them. <u>See</u> <u>Meshell</u>, 2 So. 3d at 135 ("We agree that sexual acts of a separate character and type . . . are distinct criminal acts."); <u>see also</u> <u>Drawdy</u>, 136 So. 3d at 1214 ("The lewd touching here was not an integral or necessary part of the sex act, but a

separate and distinct act by itself.").  The facts of the instant case are readily distinguishable.  Here, Jacobs' dual convictions for violation of a stalking injunction were based on (1) being within five hundred feet of the victim and (2) contacting the same victim.  Indeed, it appears that Jacobs approached the victim for the purpose of yelling at her.  I cannot agree that these acts are of a separate character and type in the same way that multiple sexual acts in sexual battery case are of a separate character and type, considering the obvious distinctions in character between sexual acts and the additional harm inflicted upon a victim of sexual battery with each different type of violation.

Accordingly, I would affirm Jacobs' conviction for aggravated stalking and a single count of violation of a stalking injunction but reverse the second conviction for violation of a stalking injunction and remand for the entry of a corrected judgment reflecting a single conviction for violation of a stalking injunction.